# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FOREST GUARDIANS, a non-profit
New Mexico corporation,

               Plaintiff,

v.                              No. CIV 99-615M/KBM

UNITED STATES FOREST SERVICE,

               Defendant,

PRODUCTION CREDIT ASSOCIATION
OF NEW MEXICO, et al.,

               Intervenor-Defendants.

## MEMORANDUM OPINION
## AND ORDER

       This case comes up to consider jurisdiction. Plaintiff filed suit pursuant to the Freedom of Information Act to compel a federal agency to disclose requested documents. Extraordinary circumstances arose when third parties intervened. As persons named or having an interest in the documents Plaintiff seeks to compel, the Intervenors essentially want (a) to enjoin any further releases by the Forest Service, (b) to retrieve documents provided Plaintiff prior to the case, and (c) to preclude Plaintiff's use of materials and information received to this point. However, the broad scope of the requested relief (which in addition to injunctive relief includes a declaratory judgment and compensatory damages) and the Intervenors' failure to identify an actionable right or to tie claims and requested relief to subject matter jurisdiction presents several legal questions.

       Having allowed the Intervenors' added opportunity to submit legal authority, and having considered the memoranda on jurisdiction, I now conclude that most of what the Intervenors

request cannot be provided and all the Intervenors' claims except those grounded in the Administrative Procedures Act must be dismissed.

I conclude that (1) jurisdiction exists pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552, only to compel (and not to preclude) the release of information; (2) jurisdiction exists pursuant to the Administrative Procedures Act (APA), 5 U.S.C. sec. 702, but only if the agency has made a final decision (which according to the agency's most recent statement may have been withdrawn); (3) jurisdiction exists to review a discretionary release of documents, but review is restricted to the agency record; (4) no jurisdiction or cause of action permits the Intervenors an award of compensatory damages; and (5) no claims or causes of action are raised by the Intervenors against the Plaintiff, nor can be, and no jurisdiction exists to provide the Intervenors any relief from actions of the Plaintiff, whether past or intended.

History and
Factual Background

Plaintiff Forest Guardians is a New Mexico non-profit organization whose membership has joined together for the stated purpose of "increasing the general public awareness of public lands management issues confronting federal agencies with responsibility over public land, water, and fish and wildlife habitat." According to Plaintiff, one of it's "primary missions is to acquire, compile, and analyze information and data regarding natural resources on federal public lands in the western United States, and federal activities and federally-permitted activities on those lands, including timber sales, grazing, water management, and recreational development." (Complaint for Declaratory and Injunctive Relief at para. 5.)

In line with these stated purposes, in 1998, Plaintiff made formal FOIA requests to

Defendant the United States Forest Service, an agency of the United States Department of Agriculture, asking for copies of "escrow waivers." These waivers document the use of grazing permits in several national forests as pledged collateral to secure substantial private borrowing. An escrow waiver enables the holder of a grazing permit to assign his or her privileges under the permit to a lender as security for a loan, but at the same time, retain use of the permit as long as loan obligations are satisfied. The waiver enables a lender to add value to the base worth of a borrower's real property and (as justified by existence of the permit and the enhanced value of the collateral) substantially increase the amount of a loan.

The United States Forest Service defines an escrow waiver as a "document wherein a permittee who mortgages permitted livestock or base property waives all privileges to the United States except the privilege of continuing to graze livestock." Forest Service Handbook 2209.13, sec. 18.21. The waiver document is generated by the Forest Service and made available to creditors issuing mortgages to permittees. In its standard form, a waiver identifies the holder of a grazing permit and the holder's personal financial information, such as amount of the loan secured and identity and value of other collateral pledged.

According to Plaintiff, escrow waivers relate directly to how the Forest Service manages national forest land and therefore are a matter of public interest. Plaintiff's focus on escrow waivers originates primarily in the premise that a permittee's use of a grazing permit as loan collateral and a lender's attachment of a dollar value to the permit--on which significant indebtedness and the health of the lending institution and the ranching industry, in general, may depend--creates heavy pressure on the United States Forest Service to maintain grazing permits at maximum usage, rather than at adjusted and more environmentally prudent levels.

Plaintiff has not yet received what it seeks from the Forest Service pursuant to its FOIA requests. When Plaintiff first asked for copies of all escrow waivers pertaining to several national forests, the Forest Service responded region by region, in some instances, refusing to provide any waivers, and in other instances, providing copies with redacted information. Redactions related to a permit holder's mortgages, liens, other collateral and loan amounts, but apparently, in addi-tion to responses, the redactions also varied from region to region. In spite of Department of Agriculture regulations requiring notice to submitters of the information, no regional office (or any other) noticed creditors or individuals named in the waivers of the FOIA requests or the agency's intention to release documents.

Protesting the redactions and the refusal of some offices to provide copies, redacted or otherwise, Plaintiff initially appealed pursuant to FOIA directly to the Forest Service. In June 1999, after the Forest Service failed to respond to the appeal, Plaintiff filed the present case to compel production of the redacted information, as well as copies of all additional waivers. Plaintiff's Complaint for Declaratory and Injunctive Relief alleges that Defendant's deletion of information from the escrow waivers is not within any FOIA exemption and Defendant's refusal to disclose the requested documents stands in clear violation of the statute. The Complaint requests a declaratory judgment that Defendant has improperly withheld agency records, an injunction compelling immediate release of all missing escrow waivers and completion of redacted information, as well as attorney's fees pursuant to 5 U.S.C. sec. 552(a)(4)(E). As a customary FOIA case to compel agency production, none of the issues to this point raise juris-diction questions. By express provisions of the Freedom of Information Act, all of the issues arising from the Plaintiff's case are soundly within the jurisdiction of a federal district court.

<u>Defendants-in-Intervention
and Additional Claims for Relief</u>

In the process of litigation, Plaintiff and Defendant reached an agreement by which the Forest Service would provide additional escrow waivers with specific and uniform redactions and Plaintiff would accept this production as full resolution of the case. The parties reduced this agreement to a writing which was filed in this case, but never approved. The once proposed Amended Settlement Agreement, now withdrawn, states that Defendant will provide new copies of the escrow waivers previously released, but will redact no more than loan amounts, due dates and names of individual lenders. According to the agreement, the names of institutional lenders are not to be redacted, but instead, are to be listed according to their holdings in each national forest, with the list indicating aggregate total dollar amounts for each lender, "provided the lender has more than one loan on that national forest." Individual lenders' loan amounts are also to be released in aggregate form with a total dollar amount for each forest.

Defendants-in-Intervention entered this case to prevent approval of this proposed resolution, to enjoin all further release of escrow waivers and waiver information, and to retrieve the documents already released. These Intervenors are the Production Credit Association of New Mexico, AgAmerica Farm Credit Bank, Western Farm Credit Bank, Ninth Farm Credit District, AgricBank, FCB, Farm Credit Bank of Texas, Public Lands Council, New Mexico Public Lands Council and the New Mexico Cattle Grower's Association. These entities include submitters of the information at issue, persons or parties who are named and whose assets are described in the information, and financing institutions and retail lenders directly involved in the use and administration of escrow waivers. All demonstrate a direct interest in the information Plaintiff

seeks to compel and make public, and all assert a right to notice prior to any release of information or escrow waiver forms.

In one way or another, the Intervenors comprise segments of the Farm Credit System of the United States, first established by Congress in 1916. Intervenor Production Credit Association is a commercial retail lender engaged exclusively in the business of lending to farmers, ranchers and producers or harvesters of agricultural products. The six intervening Farm Credit Banks (AgAmerica, Western, Ninth Farm Credit District, AgricBank, FCB, and Bank of Texas) are all wholesale lenders who finance farm credit associations making and servicing long-term mortgage loans for the purchase of real estate and short term loans for financing of agricultural production and the purchase of production assets. These banks, organized as cooperative businesses and owned by the farm credit associations they finance, provide funds and support services to approximately 200 farm credit associations and cooperatives (including Production Credit Association of New Mexico) in eleven Western states. The Farm Credit Banks have a Memorandum of Understanding with the United States Forest Service dating from 1938, which articulates both bank and Forest Service procedures for the administration of escrow waivers. Intervenors Public Lands Council, New Mexico Public Lands Council and the New Mexico Cattle Grower's Association are non-profit organizations who appear on behalf of their membership, federal grazing permittees. The Public Lands Council claims over 20,000 members in the livestock industry throughout the United States. These Intervenors allege by their Application for Leave to Intervene and Motion for a Preliminary Injunction that they stand to suffer severe and irreparable harm by disclosure of the private and confidential information contained in the escrow waivers.

Together, the Intervenors claim that escrow waivers are "an integral part of the lending

system established by the Farm Credit Banks as part of financing its customers, the farm credit associations." All express intense interest in protecting the existing system, including the confidential nature of information submitted by borrowers and lenders. According to the Intervenors, the present escrow waiver system and its confidentiality are absolutely necessary to protect the financial stability of farmers and ranchers holding grazing permits, the economic vitality of the Farm Credit System, and the managerial prerogatives of the Forest Service. Beyond preventing disclosures in the future, the Intervenors want to enjoin Plaintiff from using or disseminating escrow waiver information obtained from the Forest Service to this point. Stating they and their membership will be "severely and detrimentally affected" by disclosure of the private and confidential information Plaintiff has in its possession and seeks to compel, the Intervenors strongly protest any use or release of escrow waiver information. They contend disclosure in any form (1) will seriously jeopardize future funding for livestock operations, (2) will have detrimental consequences to the financial institutions involved, (3) is statutorily prohibited, and (4) is constitutionally proscribed because of the personal and private nature of the information.

The Intervenors have not filed a cause of action against the Plaintiff, but in cross claims against the Forest Service allege violations of the Privacy Act, 5 U.S.C. sec. 552(a), the Administrative Procedures Act, the Freedom of Information Act at section 552(b)(3), pertaining to information protected by statute, at section 552(b)(6), pertaining to information which, if released, would constitute a clearly unwarranted invasion of privacy, at section 552(b)(8), pertaining to protection of financial institutions, and Department of Agriculture regulations at 7 C.F.R. sec.1.11(a), requiring notice prior to release of escrow waiver information, and 7 C.F.R. sec.1.11(b), providing for a discretionary release of information.

<u>Jurisdiction to Proceed</u>

While the Intervenors suggest several bases for jurisdiction with regard to the statutory violations alleged and itemize various grounds for granting the relief sought--federal question jurisdiction, the Mandamus Act, the Declaratory Judgment Act, the Privacy Act, FOIA, the APA, and general powers of equity--most Intervenors address jurisdiction only from a broad spectrum, if at all. In general, the Intervenors fail to cite explicit causes of action, do not refer to any specific statutory provision permitting a particular remedy and avoid law which explicitly pro-scribes a requested remedy. Some Intervenors go far afield with plans to convert their case to a class action or a legal analysis of factors which might avoid a declaration of mootness. Others propose with questionable authority that a federal district court has unlimited power to provide relief wherever it is authentically needed. "Federal courts, as courts of equity," argues one, "have the power to fashion any remedy deemed necessary and appropriate to do justice in a particular case." This is neither a complete nor a fair statement of the law.

As a starting point, I note there is no federal common law; <u>Erie Railroad Co. v. Tomp-kins</u>, 304 U.S. 64 (1938); and cases the Intervenors cite to support the proposition that federal courts have unlimited power to enjoin unjust or questionable government action do not. <u>Jicarilla Apache Tribe v. Andrus</u>, 687 F.2d 1324 (10th Cir. 1982), for example, arises in a completely different statutory context. An oil and gas lease controversy, the <u>Jicarilla Apache</u> case is solidly grounded in the National Environmental Protection Act, expressly granting a right in certain circumstances to an environmental impact statement and a right to have federal agency action invalidated when not providing one. In the present case, however, no constitutional or statutory right allows for what the Intervenors want, regardless of the factual circumstances, the degree of

imminent harm or the obvious imbalance between the Intervenors' position and the powers of the government.

This is not said to diminish the gravity of the situation or to minimize the dilemma. As the Tenth Circuit noted in <u>Parks v. Internal Revenue Service</u>, 618 F.2d 677, 684 (10th Cir.1980), the issues are very sensitive ones, and I have very thoroughly considered the whole of the Intervenors' position. I readily grasp the breadth and depth of their concerns regarding the information Plaintiff wants to make public, and I understand, as well, the frustration where grave detriment could occur, but no right of action to safeguard against it is apparent.

Nevertheless, except for the APA, I cannot see that the Intervenors present a route to the relief they request. Not only jurisdictional issues and sovereign immunity, but also other very specific statutory impediments stand in the way of what is needed to close the great chasm between the federal decisions at issue and the meaning and consequence of those decisions to the intervening interests. Whether a separate action beyond the confines of this FOIA case might present a means to the Intervenors' desired ends, I have no opinion. The absence of sound jurisdictional bases in the present case, however, leaves me unable even to consider most of the relief requested.

There are several fundamental problems. Defendant the United States is absolutely immune from suit except to the extent Congress has expressly waived sovereign immunity and consented to suit. <u>United States v. Sherwood</u>, 312 U.S. 584, 587-588 (1941); <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980). In addition, except for the APA, the statutory authority on which the Intervenors rely either affords no private right of action or fails to authorize a remedy that reaches the Intervenors' needs.

FOIA waives sovereign immunity only in cases to enjoin withholding and compel production. It encompasses no means to preclude disclosure or to inhibit the use of information once it is released. 5 U.S.C. sec. 552(a)(4)(B); <u>Chrysler v. Brown</u>, 441 U.S. 281 (1979); <u>Campaign for Family Farms v. Glickman</u>, 200 F.3d 1180, 1184 (8th Cir. 2000). FOIA's express exemptions are no more than exemptions from mandatory disclosure; even materials clearly falling within an exemption are not prohibited agency disclosures. <u>Id</u>. at 1184-1185. A federal agency "may release records exempt from mandatory disclosure under 5 U.S.C. sec. 552(b) whenever it determines that such disclosure would be in the public interest." <u>Id</u>. at 1185.

FOIA is therefore applicable only to the Plaintiff's case; it confers no jurisdiction to entertain the cross claims or Intervenors' requests for relief.

Neither can I issue an injunction prohibiting disclosure by reason of the Privacy Act. <u>Parks v. Internal Revenue Service</u>, <u>supra</u>. First, because the Privacy Act is expressly confined to federal agencies, it confers no jurisdiction to hear issues relating to the Plaintiff. <u>Id</u>. at 680. With regard to the Forest Service, the Privacy Act does not authorize injunctive relief to prohibit a document release. <u>Id</u>. "[T]he legislative history evidences an intent to preclude the availability of injunctive relief in all cases." <u>Id</u>. at 683. "A relevant principle of construction is that where, as here, the statute provides for certain special types of equitable relief but not others, it is not proper to imply a broad right to injunctive relief." <u>Id</u>.

Equally important, the Privacy Act cannot be asserted by an organization on behalf of its members. <u>Id</u>. at 684. "The remedial section of the Senate bill . . . granted a cause of action to any 'aggrieved person.'" <u>Id</u>. at 682. Only an individual can state a claim pursuant to the Privacy Act. <u>Id</u>. at 684. One Intervenor's cavalier statement that it is ready immediately after a ruling on

jurisdiction to amend its pleadings and file a class action is not in the least realistic. The Privacy

Act does not permit an organization to sue even in a representative capacity. Id. "Each of the

plaintiffs would have to testify because the actionable injury and the damages are individual." Id.

Speaking practically, any Intervenor who wants to pursue a case of immeasurably greater scope

and complexity than the FOIA case here presented will need to file a wholly independent suit.

There is no possibility I will allow the present case to be converted to a class action on a cross

claim against the Defendant that cannot in any event reach the Plaintiff.

Similarly, other suggested grounds for relief are impossible ones. The Mandamus Act

provides neither a grant of jurisdiction nor a waiver of sovereign immunity. Schulke v. United

States, 544 F.2d 453 (10th Cir.1976); New Mexico v. Regan, 745 F.2d 1318 (10th Cir. 1984),

cert. denied 471 U.S. 1065 (1985). The Mandamus Act is also not applicable where the claim

seeks a prohibitory or preventive order and not a mandatory one. Schulke v. United States, 544

F.2d 453, 455 (10th Cir. 1976); Parks v. Internal Revenue Service, supra at 683.

The federal question provision of the Judicial Code "is not a remedial provision." Id. In

addition, federal question jurisdiction and the Declaratory Judgment Act are absent waivers of

sovereign immunity. Their invocation in this case therefore stops at the threshold. New Mexico v.

Regan, supra at 1322-1323. The Intervenors also fall far short of pleading a case of constitu-tional

proportions and do not establish either denial of due process or other constitutional issues.

Of all that the Intervenors cite, only the APA constitutes a waiver of sovereign immunity.

Chrysler Corporation v. Brown, supra at 285; Bard v. Seamans, 507 F.2d 765 (10th Cir. 1974).

As "the well-spring of the information-submitter's right to sue," jurisdiction pursuant to Section

10 of the APA is exclusive; there are no other possibilities. National Organization for Women,

D.C. Chapter v. Social Security Administration, 736 F.2d 727, 736 (D.C. Cir. 1984). The APA, however, expressly reaches only the Defendant (and not the Plaintiff) and strictly limits both the Intervenors' claims and available relief. 5 U.S.C. sec. 702; United States v. Mitchell, supra; Parks v. Internal Revenue Service, supra. The APA provides no means to retract agency actions after they have been taken. Anderson v. Department of Health and Human Services, 3 F.3d 1383, 1384 (10th Cir. 1993); Sterling v. United States, 798 F. Supp. 47, 48 (D. D.C. 1992). Its scope does not reach to retrieving documents from private parties. Swan v. Securities Exchange Commission, 96 F.3d 498, 500 (D.C. Cir. 1996). Neither does the APA allow monetary compensation. New Mexico v. Regan, supra at 1322-1323; Amendariz-Mata v.United States Department of Justice, 82 F.3d 679, 682 (5th Cir. 1996), *rehearing denied* 95 F.3d 56 (5th Cir.), *cert. denied* 519 U.S. 937 (1996).

Therefore, in this case jurisdiction exists only to decide (1) whether the information at issue is exempt from mandatory disclosure under FOIA, and (2) whether Defendant's decision to release additional documents and information (if not now withdrawn) violates the APA as arbitrary and capricious or otherwise contrary to law. The first presents a legal question which stands as a "threshold determination" because its resolution will decide whether the Intervenors have any case at all. National Organization for Women, D.C. Chapter v. Social Security Administration, supra at 736, fn 86. The second is decided solely on the administrative record. Id. at 734; Acumenics Research & Technology v. United States Department of Justice, 843 F.2d 800 (4th Cir. 1988).

> In a reverse-FOIA case the threshold question is whether the
> documents sought are subject to mandatory disclosure or fall
> within an exemption to the Act. If the documents sought are

subject to mandatory disclosure, the lawsuit is at an end. If the documents, or portions thereof, fall within an exemption to mandatory disclosure, the Act does not apply and the agency's decision to disclose the documents is subject to reversal only for an abuse of discretion. <u>National Organization for Women, D.C. Chapter v. Social Security Administration</u>, <u>supra</u> at 735.

There is nothing else to be done or to be considered. "In the context of a direct-FOIA suit to compel agency disclosure, the FOIA itself provides for de novo review of an agency's claim that the information sought is covered by an exemption. (Cite omitted.) If an agency decided that the information was not within an exemption, it would then be proper to review that decision requiring disclosure under an 'abuse of discretion' standard." <u>Acumenics Research & Technology v. United States Department of Justice</u>, <u>supra</u> at 803.

In another context, the Supreme Court has interpreted sec. 706 (2)(F) to justify de novo review in only two situations (1) "when the action is adjudicatory in nature and the agency fact finding procedures are inadequate," and (2) "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." <u>Id</u>., citing <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 415 (1971).

I conclude that the Forest Service actions at issue are adjudicatory in nature. At the same time, neither of these two questions--whether the agency's fact finding procedures were inadequate and whether issues not considered by the agency are raised in this proceeding--are at issue. Until one or the other premise is clearly established in the affirmative, I will limit the case to review of the agency record and an "abuse of discretion" standard. See.: <u>Id</u>.; <u>National Organization for Women, D.C. Chapter v. Social Security Administration</u>, <u>supra.</u>

<u>The Administrative Record</u>

The administrative record "consists of all documents and materials directly or indirectly

considered by the agency." <u>Bar MK Ranches v. Yeutter</u>, 994 F.2d 735, 739 (10th Cir.1993).

Some Intervenors have considered the administrative record as including not only documents exchanged between Forest Guardians and the Forest Service in negotiating a release of documents, but also materials which are or might be accumulated in this case through formal discovery. The is not appropriate; the Intervenors have no part in deciding what is or is not included in the agency's record. <u>Id</u>. The agency's designation of the record is presumed to be correct. <u>Id</u>. at 740. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." <u>Camp v. Pitts</u>, 411 U.S. 138, 141 (1973).

I note in this regard that Intervenors' efforts at discovery (which I have denied) have been directed at an officer of Plaintiff Forest Guardians, and not at Forest Service officials who are responsible for the decisions at issue. This solidifies with certainty that the requested discovery is neither necessary nor appropriate. Even with a de novo review, a party is "not ordinarily entitled to submit evidence to the district court bearing on the disclosure issue." <u>Acumenics Research & Technology v. United States Department of Justice</u>, <u>supra</u> at 804, fn 5. New evidence may be introduced solely "on the preliminary question of the propriety of de novo review itself. This evidence would go solely to the question of the adequacy of the agency's fact-finding process, and would not be considered on the substantive disclosure question if de novo review were denied." <u>Id</u>.

The administrative record therefore includes neither disagreements between the Intervenors and the Plaintiff nor additional documents the Intervenors may want to collect by means of requests for production or deposition. On my determination or at the request of the Defendant, I

may permit the administrative record to be amplified by the admission of new evidence, if additional evidence is required to complete factual findings. <u>National Organization for Women, D.C. Chapter v. Social Security Administration</u>, <u>supra</u> at 735. Otherwise, the administrative record is what has been designated and filed by the agency. This consists of the correspondence between Forest Guardians and the Forest Service concerning the FOIA requests at issue, and as such, is consistent with Department of Agriculture regulations. 7 C.F.R. sec.1.23.

What the agency submits as its record, however, presents a curious situation. According to "Defendant's Response to Intervenors' Briefs on Questions Raised by Court" at p. 11: "The record, of course, only documents the decision of the Forest Service to release the documents that have been previously released." Yet, the APA provides little recourse with regard to acts completed, so that as regards documents already released and a Plaintiff outside any asserted cause of action, the record Defendant presents for review refers for the most part only to matters which are moot. (Although at least one Intervenor argues to preserve issues on the basis of long-established exceptions to the mootness doctrine, the very limited remedies permitted by the APA leads me to believe that considering past actions would be pointless.)

Judicial review pursuant to the APA is clearly dependent on "a final agency action." <u>Olenhouse v. Commodity Credit Corporation</u>, 42 F. 3d 1560 (10th Cir. 1994). Yet, it appears now that what up to this time I have considered a final agency decision, that is, the Forest Service's planned release of additional documents and other information as articulated in the proposed settlement agreement, may be a decision the agency has withdrawn. As pertains review of the release which has already occurred, I am concerned that judicial review is too late to have a purpose. With regard to releases which may occur, my concern is that even the limited jurisdic-

tion found to this point in the APA may no longer be present, because it appears from the most recent Forest Service statements it has changed its position and presently has no final decision. Accordingly, it has not yet established an administrative record with regard to planned releases. It appears, then, that the case may have taken a sudden turn and is not ripe for judicial review.

Defendant states in its response that "if a new motion to approve any settlement agreement is filed, it will be supported by appropriate declarations or other evidence stating the basis of the Forest Service's determination that further releases should occur so that the Court can review that determination and the Intervenors have an adequate opportunity to challenge that determination." Defendant states further that the record is sufficient "for determining what the Defendant believes are the appropriate remaining issues in this case, i.e. what further information (if any) should be released to Forest Guardians in response to the FOIA request." I understand Defendant to be saying the only final reviewable action is the irretrievable one. Is Defendant suggesting an advisory opinion with regard to future releases? Has the case come full circle and the only issue to be determined is Plaintiff's claim to compel production? Defendant submits an articulate and helpful brief, but this point requires an immediate, precise and unambiguous clarification. Defendant needs to file an explanation of its position prior to the June 5 hearing. Parties who want to respond to Defendant's position may do so at the hearing.

Intervenor Production Credit Association responds to this issue in its reply brief by arguing that "the record in its present state, although sketchy, is sufficient for the Court to consider a motion for summary judgment on the issues of (i) whether the agency followed proper procedures in arriving at the decision to disclose the documents which it disclosed to Forest Guardians, and (ii) whether the decision to release the documents was in error. Again, to what

purpose? Even if I were to conclude as the Intervenors suggest in both regards, the APA provides no remedy.

Narrowing of Issues

After the agency clarifies its position, and of course, depending on its answer, this case will move to the propriety of a preliminary injunction. After that, I will consider the anticipated cross motions for summary judgment. It may be, on the other hand, that the pending motions for a preliminary injunction will need to be considered in conjunction with motions for summary judgment and cannot be decided separately. It appears that the issue of a preliminary injunction may be so tied to the merits of the case that the former becomes impossible to decide without deciding the latter. This may be more or less evident after the motions are heard.

In the interim, I see no reason not to limit the issues. Therefore, I dismiss all Intervenors' claims for monetary damages. I do not believe anything further can be raised or argued to persuade me that under any set of facts an Intervenor has or can find a cause of action entitling it to monetary compensation. Any expectations in the minds of intervening parties pertaining to relief against the Plaintiff should also be set aside. Intervenors raise no cause of action against the Plaintiff, and the only right of action which confers jurisdiction to entertain cross claims, the APA, clearly allows no relief of any nature or extent against the Plaintiff, regardless of the merits or the circumstances. The pending motions for a preliminary injunction are therefore limited to the Forest Service. Again, there is neither claim nor statute which allows injunctive relief against the Plaintiff.

In spite of these limitations on the Intervenors' claims, all parties are to maintain the status quo, at least until after the scheduled hearing, Even though I conclude that no injunctive relief can

be directed to the Plaintiff, Plaintiff should continue with the same restraint it has exercised to this point, until the last of the argument has been heard and there has been an opportunity for a final meeting of the parties in the courtroom.

NOW, THEREFORE, IT IS ORDERED that for a clear lack of subject matter jurisdiction, all cross claims for monetary damages and all cross claims purportedly grounded in any cause of action other than the Administrative Procedures Act are dismissed without prejudice; and

IT IS ORDERED that the Intervenors' Motion to Supplement the Administrative Record is denied; insofar as the Stipulation of the parties provides for additions to the record, these may be attached as exhibits to the motions for summary judgment (with the usual limitations imposed by the local rules) and will be considered pursuant to Rule 56; only examples and not multiple escrow waivers are to be included; and

IT IS FURTHER ORDERED that Defendant the United States Forest Service file immediately a clear statement of its position, unambiguously articulating whether it has withdrawn the decision to release documents to the Plaintiff and whether or not it considers a final decision to have been made or to be imminent with regard to release of additional escrow waivers or other information.

_____
SENIOR UNITED STATES JUDGE