**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

FOREST GUARDIANS, a non-profit
New Mexico corporation,

         Plaintiff,

v.                            No. CIV 99-615M/KBM

UNITED STATES FOREST SERVICE,

         Defendant,

PRODUCTION CREDIT ASSOCIATION
OF NEW MEXICO, et al.,

         Intervenor-Defendants.

## <u>MEMORANDUM OPINION</u>
## <u>AND ORDER</u>

This is a Freedom of Information Act case which comes up at this time on Defendant's

Motion to Dismiss and five Motions for Summary Judgment filed by Plaintiff, by Defendant and

by three separate groups of Intervenor-Defendants. While I dispose of each of these motions, only

the Plaintiff's Motion for Summary Judgment has been considered pursuant to Fed.R.Civ. Proc.

56. This motion is denied because I conclude that personal financial information is outside both

mandatory and discretionary disclosure pursuant to the Freedom of Information Act, and because

as to other issues, I find genuine issues of material fact.

       The claims presented by Intervenor-Defendants arise solely from the Administrative

Procedures Act. The Act limits district court jurisdiction to review of final administrative actions.

1

This review is in the nature of an appeal, and rules of procedures designed for trial are not applicable. Therefore, none of the Motions for Summary Judgment filed by Intervenors has been considered pursuant to Fed. R. Civ. Proc. 56. I have considered these motions and all responses and exhibits relevant to the motions as if the motions had been properly designated and properly presented as appeals of a final agency decision, and I have decided the Intervenors' cases on the merits. I deny Defendant's Motion to Dismiss the Intervenors' cross claims, and I conclude in favor of the Intervenor-Defendants that the manner in which Defendant responded to Plaintiff's Freedom of Information Act requests was arbitrary and capricious.

The Motion for Summary Judgment filed by Defendant seeks a court order directing it to release information to Plaintiff pursuant to the Freedom of Information Act. FOIA, however, explicitly directs each administrative agency to make the determinations Defendant attempts to defer to a district court and does not allow an agency to avoid or delegate its responsibility to respond promptly and decisively to a FOIA request. Defendant's Motion for Summary Judgment is therefore interpreted as a request for an advisory opinion on issues the agency has refused or neglected to decide. For this reason and for the reason Defendant's motions accomplishes nothing but additional argument on behalf of the Plaintiff, I do not consider the motion.

<u>Undisputed Facts</u>

On October 27, 1998, Plaintiff Forest Guardians sent a Freedom of Information Act request to Defendant's Washington office. The request sought several categories of records, all pertaining to the pledging of federal grazing permits as collateral for private loans. Three weeks later, Forest Guardians sent similar requests to several of regional offices of the Forest Service. These requests asked for "all escrow waivers for all grazing permits on all allotments" within each

Forest Service region.

Escrow waivers are uniform federal forms prepared by lenders at the request of the Forest Service to record the use of a federal grazing permit as collateral to secure a loan. A lender places a monetary value on the grazing permit and adds this to the value of a borrower's other property in order to increase the amount loaned. The rancher, farmer or other holder of a grazing permit then assigns the permit to the lender as security in event of a default on the loan. The lender holds the permit in escrow and the rancher or farmer (referred to as the permittee) retains use of the permit while the mortgage is pending. The escrow waiver thus provides a lender protection in the event of non-payment, and at the same time, it allows ranchers, farmers and other agricultural producers to pledge the grazing permit and increase available financing for ranch, farm, livestock and other operations.

If a borrower defaults on a loan secured by an escrow waiver and the lender liquidates, the Forest Service recognizes the lender as successor to the grazing privileges and  accords the lender "the same consideration with respect to cuts, renewals, and range allotment as would customarily be accorded individual local permittees." A lender named in an escrow waiver or its receiver or liquidator, after a default, may qualify for a permit if any institution of the Farm Credit System owns or controls the base property or the livestock that will be run on the Forest lands by virtue of the permit.

Escrow waivers were established in 1938 by a Memorandum of Understanding between the United States Department of Agriculture, responsible for grazing permits, and the Farm Credit Administration, responsible for the Farm Credit System created by Congress to provide agricultural credit. This Memorandum of Understanding confirmed grazing permits as a privilege,

rather than a property right, but expressly permitted the holder of a grazing permit, "to qualify temporarily his personal privilege" when negotiating a loan. This temporary qualification is accomplished "by surrendering" an "Escrow Waiver of Term Grazing Permit Privileges" and giving up all privilege carried by the permit, except the privilege of continuing to graze stock on National Forest land under the permit provisions--"pending satisfaction of the mortgage or a written statement by the Lender that it no longer relies upon the escrow arrangement."

The 1938 Memorandum of Understanding was renewed in 1990, and the Farm Credit Banks, Intervenor-Defendant in this action, succeeded the Farm Credit Administration as a party. The Farm Credit Administration reverted to an arm's length administrator, but despite the change, the Memorandum of Understanding between agricultural lenders and the Department of Agriculture remained essentially the same. The second Memorandum of Understanding, like the first, recited a purpose of maximum cooperation in facilitating the use of escrow waivers.

The United States Forest Service is the agency within the Department of Agriculture responsible for managing both the National Forests and permits to graze livestock on forest land. Regional offices of the Forest Service maintain records evidencing escrow waivers pertaining to National Forest land within its region. Each escrow waiver form contains:

a. The name of the permittee;

b. The date a federal grazing permit issued to the permittee;

c. The name of the National Forest to which the grazing permit applies;

d. The number and type of livestock permitted by the grazing permit;

e. The date the permittee mortgaged base property and livestock;

f. A legal description of all property, including number and type of livestock,

pledged as collateral to secure the mortgage;

g. The names of lien holders;

h. The name of the mortgagee;

i.  The amount and due date of the loan.

The amount of increased financing specifically attributable to the grazing permit is not indicated on the escrow waiver form. The stated loan amount represents the entire amount loaned as secured by all the property pledged, and no separate valuations are given for the grazing permit.

In July 1999, in response to Forest Guardians' Freedom of Information Act request, the Forest Service released over 1700 sequentially numbered pages of documents to Forest Guardians, including some copies of escrow waivers. Some Forest Service regional offices refused to release copies of escrow waivers for the stated reason that "the majority of the information that appears on the escrow waiver form is financial and personal information." Other regional offices, however, released escrow waivers to Forest Guardians, some of these with redactions and some without. Where made, redactions were inconsistent both within a single region and from region to region. For the most part, Forest Guardians received the name of the permittee and a description of all property the permittee had pledged to secure the loan. Except for an unspecified number of inconsistencies, releases from Forest Service regional offices generally withheld the identity of the lender, as well as the loan amount and due date.

Although the Department of Agriculture has promulgated regulations for the processing of Freedom of Information Act requests and these regulations include notification to persons and institutions submitting commercial and financial information, neither the Washington office of the Forest Service nor any Forest Service regional office attempted to notify any lender named in an

5

escrow waiver or any permittee that Forest Guardians had requested copies of all escrow waivers or that some Forest Service offices intended to release escrow waivers pursuant to a FOIA request.

Because Defendant did not provide all escrow waivers and some of the escrow waivers released included redacted information, Forest Guardians regarded the Forest Service response non-compliant. Pursuant to requirements of the Freedom of Information Act, Forest Guardians appealed directly to the Forest Service. On June 1,1999, after the Forest Service failed to decide this administrative appeal within statutory time frames, Forest Guardians filed suit in federal district court seeking to compel release of all requested information.

By its answer to the Forest Guardians' complaint, the Forest Service initially denied it had failed to comply with the Freedom of Information Act. Several months later, however, it agreed to release all additional documents with specified redactions, and together with Forest Guardians, it filed a proposed settlement agreement for court approval. This agreement has been regarded as a final agency decision.

Before the agreement was approved or any additional information provided Forest Guardians, third parties intervened in the case to oppose the agreement and halt release of any escrow waiver information. The several organizations and institutions permitted to intervene as defendants represent (a) retail lenders and (b) wholesale lenders within the Farm Credit System and (c) ranchers, farmers and agricultural producers holding federal grazing permits. These Intervenors contend that release of escrow waivers and the private, confidential and commercial information they contain will cause irreparable harm not only to individual permittees, but also to the Farm Credit System created by Congress to finance agricultural producers.

After objections and cross claims were filed by the Intervenor-Defendants, the Forest Service withdrew the settlement agreement and the motion for its approval. Shortly thereafter, following a request for clarification of its position, it repudiated the administrative decision to release additional documents to Forest Guardians. The parties then filed the several pending motions. Forest Guardians continues to seek disclosure of all information requested and the Intervenor-Defendants continue to oppose the release of escrow waivers.

During the course of litigation, Forest Guardians has posted some or all of the escrow waiver information it received from the Forest Service on its internet website. Some of the escrow waivers posted have information redacted. Most of these redactions eliminate lender and loan amounts. Thirty-two of the escrow waiver records published name the lending institution. All or most of the records published include personal identifying information accompanied by personal financial information. According to Forest Guardians, in "approximately 11" instances, "financial information was obtained because of ineffective redactions by the Forest Service," and in three instances, "financial information was obtained from county courthouses, and in one case from a [sic] appeal made on behalf of a grazing permittee . . . ."

<u>Parties</u>

Plaintiff Forest Guardians describes itself as a public-interest organization formed "to acquire, compile, and analyze information and data regarding natural resources on federal public lands" and to provide the general public with information concerning "issues confronting federal agencies with responsibility over public land, water, and fish and wildlife habitat." In its initial request for information addressed to the Forest Service, Forest Guardians states it "has a particular interest in the various ways in which the Forest Service' resource management

7

decisions affect the various resource values of public lands" and possession of the requested

documents would enable the organization "to participate more effectively" in decision making

within the Forest Service.

Forest Guardians has several times reiterated that it works in the public interest. In the

memorandum supporting its Motion for Summary Judgment, Forest Guardians states that

> The Forest Service, by agreeing to act as an escrow
> agent to facilitate the collateralization of public lands grazing
> privileges by private parties, fosters both an expectation and
> economic pressure on the part of both grazing permittees and
> their lenders to pressure the Forest Service to maintain the
> highest possible levels of grazing on the permitted allotments
> used as collateral under the agency's escrow waiver program.

Further, Forest Guardians states that

> information contained in the Forest Service's escrow waiver
> records is publicly significant in that those records show the
> financial and geographical scope of the escrow waiver program
> . . . . There is a legitimate and substantial public interest in
> knowing about the use of escrow waivers on publicly owned
> land and to know how much, who, and to what degree indivi-
> dual permittees and lending institutions have collateralized the
> public's National Forests through the escrow waiver program.

Accordingly, Forest Guardians' Motion for Summary Judgment requests a determination

that the requested records are not exempt from disclosure and that the Forest Service has violated

the Freedom of Information Act by willfully withholding escrow waiver forms.

Defendant the United States Forest Service is an agency of the United States Department

of Agriculture. It also requests a determination that the requested records must be disclosed

because they fall outside exemptions enumerated in the Freedom of Information Act. However,

the Forest Service fails to present the coherent position expected of a federal agency statutorily

charged with decision-making responsibilities, and it neglects to explain, if it considers itself

without discretion to deny release of the requested information, why it has made no provisions to

provide it. Instead, the Forest Service refuses to acknowledge any responsibilities pursuant to the

Freedom of Information Act or Department of Agriculture regulations or to evidence any

standardized procedures precipitated by a Freedom of Information Act request.

      The Forest Service thus takes more than one inherently contradictory position. With

regard to Department of Agriculture regulations which require--"if a request . . . is received . . .

for information submitted by a business"--that the business submitter be given notice of the

request, the Forest Service argues, first, that it does not "rely"on the regulation in defending its

release of escrow waivers to Forest Guardians, and second, that the regulation applies to

discretionary releases only and the releases at issue are mandatory. Aside from the fact that these

arguments are not supported by anything in the administrative record and constitute no more than

post hoc rationalizations not to be considered, the arguments themselves raise serious questions.

If the Forest Service determined the release of escrow waivers to be mandatory, why did Forest

Guardians need to sue the Forest Service to compel release? If the Forest Service considers the

requested information outside any Freedom of Information Act exemption, why was the Forest

Service unable to reach an administrative determination or stand by its settlement agreement

contemplating release? If the Forest Service did not "rely" on the regulation requiring notice to

submitters of business information, how and when did it provide for or consider submitters'

objections? If pertinent facts and circumstances are intentionally ignored, how does an

administrative agency reach a rational decision? How does the Forest Service come to a

determination two years after receiving FOIA requests that release of the requested information is

mandatory? Even though the Forest Service now purports to make a reasoned decision and to have weighed the public interest in escrow waivers against personal privacy and commercial interests, the only inference that can be taken from either the administrative record or what the Forest Service files with regard to pending motions is that, even though all of the Intervenors in this case have asserted facially credible personal and business interests in escrow waiver information, these interests have not been acknowledged at any point in the administrative decision making process.

The Intervenor-Defendants, principally organizations comprised of permit holders and lending institutions within the Farm Credit System, argue that escrow waivers disclose private financial information and private loan transactions and necessarily include protected business information, all precluding the Forest Service from any blanket release of documents, with or without redactions. The Intervenors contend that escrow waivers are fully protected by provisions of the Freedom of Information Act which expressly exempt the kind of information at issue, that past release have caused the Intervenor-Defendants and their members to suffer grave harm, that future releases threatened additional harm in the extreme, and that release of escrow waiver information by the Forest Service is arbitrary and capricious and contrary to law.

Intervenor Production Credit Association of New Mexico (PCANM) is an association of retail lenders incorporated pursuant to the Federal Farm Credit Act of 1933. PCANM makes commercial loans to farmers, ranchers and other agricultural producers in 31.5 of New Mexico's 33 counties as part of the Farm Credit System, the largest single provider of agricultural credit in the United States. PCANM intervenes to prevent the release of escrow waivers in any form. It maintains that escrow waivers contain confidential and proprietary information, and citing

10

Department of Agriculture regulations, Farm Credit Administration regulations and a Farm Credit Administration Policy Statement on Borrower Privacy, that release of escrow waiver information is prohibited by law.

Intervenor-Defendants AgAmerica Farm Credit Bank, Western Farm Credit Bank, Ninth Farm Credit Bank, AgriBank, FCB and Farm Credit Bank of Texas (the Farm Credit Banks) are also lending institutions within the Farm Credit System. Serving several states, the Farm Credit Banks are wholesale lenders which finance farm credit institutions (including PCANM) by long-term mortgage loans for the purchase of real estate by farmers and ranchers. The Farm Credit Banks allege that the privacy of lending information is vital to their "continued dependability and long-term success" and that release of escrow waivers will cause substantial and irreparable harm to the agricultural credit industry. First, the Farm Credit Banks maintain that release of private lending information will destabilize their customers' retail lending business and thereby threaten their own economic vitality. Secondly, the Farm Credit Banks argue that release of private lending information "negatively impacts the credit-worthiness of the entire Farm Credit System including the Farm Credit Banks" and "places the Farm Credit Banks at a competitive disadvantage when the Farm Credit Banks compete with commercial lenders outside the Farm Credit System." The Farm Credit Banks contend that escrow waivers are exempt from a mandatory Freedom of Information Act release because the information they contain is personal, confidential, financial and commercial.

Intervenor-Defendant Public Lands Council is a non-profit organization representing more than 20,000 individuals in the livestock industry who utilize federal lands for livestock grazing. Intervenor-Defendant New Mexico Public Lands Council is a non-profit organization representing

11

approximately 3,500 New Mexico members involved in the livestock industry, most of these members utilizing grazing permits on federal lands. New Mexico Cattle Grower's Association is a non-profit organization representing approximately 2,000 livestock industry members, most of these with grazing permits on federal lands. These three entities appear jointly in this action and are referred to collectively as the Public Lands Council or PLC. PLC also contends that escrow waivers are exempt from mandatory release, and further, that escrow waivers are not subject to a discretionary release. Escrow waiver forms are not to be disclosed, PLC argues, without the prior written authorization of each permittee.

<u>Jurisdiction and Standard of Review</u>

A. The Forest Guardians Case

Plaintiff Forest Guardians brings its action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552. The Act expressly provides for suit to compel agency disclosure and for de novo review of an agency's claim that the information sought is exempt and may be withheld. <u>Id</u>. at 552(a)(4)(B); <u>Acumenics Research & Technology v. United States Department of Justice</u>, 843 F.2d 800, 803 (4th Cir.1988). If an agency determines that information sought is not within a FOIA exemption and is subject to mandatory release, review of the agency's decision proceeds under the Administrative Procedures Act (APA), 5 U.S.C. sec. 551 <u>et seq</u>., by an arbitrary and capricious standard. <u>Chrysler Corp. v. Brown</u>, 441 U.S.281 (1979). In the latter circumstance, jurisdiction is ordinarily limited to review of the administrative record, but review may encompass consideration of the agency's pre-disclosure procedures. <u>Pacific Architects and Engineers, Inc. v. United States Department of State</u>, 906 F.2d 1345, 1348 (9th Cir.1990); <u>National Organization for Women v. Social Security Administration</u>, 736 F.2d 727 (D.C.Cir.

1984); <u>Acumenics v. Department of Justice</u>, <u>supra</u>.

Before jurisdiction and standards can be defined in the present case, however, I must acknowledge several anomalies. These peculiarities are unfortunately attributable either to Defendant's careless approach to the FOIA requests at issue or its opaque and inconsistent conduct following Plaintiff's suit. The most perplexing of these problems may be Defendant's Motion for Summary Judgment. After refusing to release documents pursuant to Plaintiff's initial requests, deciding to release information in order to terminate litigation, and then rescinding the decision to release documents, the Forest Service argues for a judgment as a matter of law that the requested documents are not exempt from disclosure and are subject to mandatory release.

Apparently, the Forest Service sees its reluctance to come to a consistent and final decision and delegation of its FOIA obligations to the judicial process as an excused indecisive-ness. "Even under the withdrawn settlement agreement," the Forest Service states, "any release of further information was conditioned on Court approval." Whether judicial review would have allowed completion of what the Forest Service decided the law or its discretion required is beside the point. Regardless of whether a decision is likely to come up for judicial review, FOIA absolutely requires an administrative agency to rule on pending information requests. Regardless of whether a FOIA request is likely to be litigated, FOIA does not allow an agency to respond haphazardly or neglect all fact finding and rational process in order to act as a neutral third party awaiting a court order safely directing what it should do.

"The agency's 'burden' of justifying its decision, whether it be to release or not to release, cannot be shirked or shifted to others simply because the decision was taken in a reverse-FOIA rather than a direct FOIA context." <u>Occidental Petroleum Corp. v. Securities and Exchange</u>

Commission, 873 F.2d 325, 343, 277 U.S. App. D.C. 112, 130 (D.C. Cir.1989). In the best light, the Forest Service admits to an impermissible ambivalence. It neglects a mandatory duty to reach a final decision on the merits of the Forest Guardians' requests and on its appeal to the agency. In the worst light, the Forest Service demonstrates unacceptably capricious conduct. Aside from the obvious observations that the Forest Service prefers a court undertake both its fact finding and its decision-making responsibilities and urges release, but nonetheless withholds, the agency's statement which purportedly withdraws any decision to release information to Forest Guardians looks very much like a disingenuous attempt to undermine judicial review of the Intervenors' claims. In either event, the Forest Service's failures provide nothing to clarify jurisdiction and everything to confound a standard of review, and I must distinguish both.

Despite the position the Forest Service argues in its Motion for Summary Judgment that the information at issue is not exempt from FOIA disclosure and should be released, this is not a case which should proceed as an APA review. First, judicial review is completely frustrated by an administrative record incapable of explaining Forest Service decisions or the procedures from which its actions arose. The point is critical in this case because an agency's decision to release information pursuant to the FOIA over the objections of the party that submitted the information to the government is adjudicatory in nature, and the administrative fact finding procedures in this instance were more than inadequate, they were willfully non-existent. Acumenics  v. Department of Justice, supra at 804.

This circumstance, at least in most situations, can only be resolved by a remand. Yet, in this case remand serves no purpose. If this case is stalled for an administrative decision, regardless of the outcome, all of the issues now pending are highly likely to be the subject of new litigation

14

and no less likely to be free of the complexities present to this point. No party here represented can be expected to relinquish its position short of utilizing every appeal. Thus, remand would undoubtedly results in an exceptionally circuitous path and an extremely lengthy and difficult deferment, and the substantial delay which would inevitably result not only ignores the timely responses explicitly demanded by the Freedom of Information Act, but also punishes Forest Guardians for shortcomings which are entirely the Defendant's.

The Federal Rules of Civil Procedure are intended to "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). More to the point, then, a decision is likely to come from trial of this case as a straightforward FOIA action to compel long before the Forest Service processes and articulates what and why it might withhold and what it might release. I understand the obviously substantial dilemma in going forward where the administrative agency neither complies with FOIA by proposing to disclose information nor defends its withholding and argues the Plaintiff's case for disclosure, but nevertheless, I see acknowledging the agency's refusal to release information absent a court order and proceeding from that point with a direct FOIA action to compel as the fair and efficacious choice.

Taking the administrative agency at its word, I find the Forest Service has made no final decision regarding whether or not to release additional information to Forest Guardians, and even though it advocates for a release of information, I conclude that the agency's failure to undertake a meaningful administrative process and reach its own determinations and the absence of a final administrative decision preclude judicial review of additional disclosures pursuant to the Administrative Procedures Act. Further, even though the Forest Service contends the bulk of the

requested information is not within a FOIA exemption and is not properly withheld, I find the agency has neither provided nor proposed to provide all the information Forest Guardians has requested and I conclude the case filed by Forest Guardians constitutes a proper suit to compel the release of documents.

Contrary to what Intervenor-Defendants the Farm Credit Banks argue, I also conclude Forest Guardians' case is not moot. The Farm Credit Banks contend that because the Forest Service has produced requested documents, albeit with redactions, Forest Guardians have received what they asked for and nothing is left to be litigated. First, by undisputed facts, the Forest Service has not produced all documents properly requested by Forest Guardians. Secondly, Forest Guardians is well within FOIA when it challenges redactions. Forest Guardians has not been seeking pieces of paper. It is fairly looking for information. So long as there are redactions of any kind on the documents provided by the Forest Service to Forest Guardians and Forest Guardians disputes the propriety of those redactions, the FOIA request is not satisfied and nothing precludes or renders moot a lawsuit to force disclosure.

Therefore, I conclude that 5 U.S.C. sec. 552(a)(4)(B) confers jurisdiction to proceed with the case filed by Forest Guardians. I conclude further that de novo review is required because the agency explicitly refuses to release the requested information without a court order. Anderson v. Department of Health and Human Services, 907 F.2d 936, 941 (10th Cir.1984). "When an action is brought under the FOIA to obtain information in the possession of a government agency, the district court must review de novo the agency's decision not to disclose the requested materials." Acumenics v. Department of Justice, supra.

For these reasons, Plaintiff's Motion for Summary Judgment is properly considered

pursuant to Rule 56. Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Thrasher v. B&B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993).

## B. The Intervenor-Defendants' Case

Only the Administrative Procedures Act (APA), 5 U.S.C. sec. 706, affords jurisdiction to consider the claims raised by the Intervenor-Defendants. Chrysler Corp. v. Brown, supra; Olenhouse v. Commodity Credit Corp., 42 F.3d 1560 (10th Cir.1994). Nothing else the Intervenor-Defendants present or designate as cross claims against the Forest Service can be entertained by a federal district court because the Intervenor-Defendants fail to identify a federal cause of action. "[F]ederal courts are of limited jurisdiction and there is no presumption in favor of subject matter jurisdiction." Bard v. Seamans, 507 F.2d 765, 766 (10th Cir.1974). For this reason, the Memorandum Opinion and Order entered May 25 dismissed all of the Intervenors' claims against the Plaintiff, all of the Intervenors' claims for monetary damages and all of the Intervenors' claims purportedly grounded in any cause of action other than the APA.

Clearly, the Intervenors cannot invoke any jurisdiction or cause of action pursuant to FOIA. FOIA grants jurisdiction to enforce disclosure; it does not provide jurisdiction to enjoin the release of information or to withdraw information once released. Chrysler Corp. v. Brown, supra at 316-317. Similarly, the Declaratory Judgment Act, 28 U.S.C. sec. 2201, does not provide a means for precluding disclosures by a government agency or for withdrawing information improvidently released from the public domain. The Declaratory Judgment Act does not confer additional subject matter jurisdiction on federal district courts, and "some statute affording

jurisdiction must apply to support a declaratory judgment." <u>Bard v. Seamans</u>, <u>supra</u>. The Intervenors provide no other statute which grants jurisdiction or supports a declaratory judgment. Neither do the Intervenors establish causes of action grounded in the Freedom of Information Act, the Privacy Act, an alleged unconstitutional violation of privacy rights or cited Department of Agriculture regulations.

The Intervenors' cases remain appeals of the Forest Service's decision to release escrow waiver information. This jurisdiction is properly derived from the APA, even though the APA has not been explicitly invoked by the Intervenor-Defendants, because the allegations claim in substance that the Intervenors are suffering a legal wrong directly resulting from an administrative action. "Reverse-FOIA actions are . . . in the nature of informal adjudications . . . and as such are reviewable under 'the generally applicable standards of Section 706.'" <u>Occidental Petroleum v. Securities and Exchange Commission</u>, <u>supra</u> at 337, 124.

APA jurisdiction, however, is strictly confined. <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402 (1971); <u>Olenhouse v. Commodity Credit Corp.</u>, <u>supra</u>. While Section 706 demands a substantial inquiry, the process involves a review under appellate standards and procedures, and federal trial rules do not apply. <u>Id</u>. Thus, the pending motions filed by Intervenor-Defendants cannot be considered pursuant to Fed. R. Civ. Proc. 56. <u>Id.</u> "When acting as a court of appeal, it is improper for a district court to use methods and procedures designed for trial." <u>Id</u>. All motions filed by Intervenor-Defendants are therefore considered as if they had been designated motions to set aside a final agency decision.

APA jurisdiction also radically limits remedies. After an exhaustive review of the administrative record, the APA allows a district court to affirm a final agency decision, but only

on the grounds articulated by the agency itself, or to set aside the decision, but only by reason of one or more of six standards listed in the APA. Id. at 1565, 1573. "[T]he essential function of judicial review [of administrative action] is a determination of (1) whether the agency acted within the scope of its authority, (2) whether the agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary, capricious or an abuse of discretion." Id. at 1574. And thus the relief afforded when agency action is held to be unlawful or capricious can be no more than a voiding or setting aside.

Yet, in the present case uncontested facts establish that the challenged administrative actions are, on the one hand, not the result of a final agency decision, and on the other hand, completed acts incapable of being undone or set aside. The first is outside APA jurisdiction. The second is susceptible to the judgment of a district court only if the claims have not been rendered moot.

### 1. Issues of Mootness

The expediency of a ruling on the propriety or legality of the Forest Service's completed FOIA releases has been addressed in this case more than once. The Memorandum Opinion and Order in May essentially set aside issues focusing on past releases because, absent jurisdiction or any practical ability to recall the information, review of completed acts appeared at that time to hold little purpose. This is a primary indication that the issues are moot and no longer present a real and continuing controversy.

Where judicial review extends to completed actions, APA jurisdiction requires that events subsequent to litigation not render issues moot. Southern Wilderness Alliance v. Smith, 110 F.3d 724, 726 (10th Cir.1997), citing Church of Scientology of California v. United States, 506 U.S. 9,

12 (1992). "Under Article III of the Constitution, federal courts may only adjudicate live

controversies." Fischbach v. New Mexico Activities Assoc., 38 F.3d 1159, 1160 (10th Cir.1994).

> It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'[Cites omitted.] For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed. Church of Scientology of California v. United States, supra.

Even if issues are not moot by reason of Article III's "case and controversy" requirement

and no constitutional rule demands the case be dismissed, the doctrine of "prudential mootness"

may require dismissal in certain circumstances. Southern Wilderness Alliance v. Smith, supra at

727. "Prudential mootness addresses 'not the power to grant relief but the court's discretion in

the exercise of that power.'" Id., quoting Chamber of Commerce v. United States Department of

Energy, 627 F.2d 289, 291 (D.C. Circ.1980). "Under both Article III and prudential mootness

doctrines, the central inquiry is essentially the same: have circumstances changed since the

beginning of litigation that forestall any occasion for meaningful relief." Southern Wilderness

Alliance v. Smith, supra.

At the time the Intervenor-Defendants entered this case, the Forest Service had released

escrow waivers (with and without redacted information) and stood on the verge of disclosing

additional escrow waiver information which in the past it had refused to release. The "event"

occurring while the case was pending was withdrawal of the proposed settlement agreement that

called for the Forest Service's release of additional information to Forest Guardians. In response

to a specific inquiry, the Forest Service confirmed it had withdrawn not only its settlement

20

agreement with Forest Guardians, but also its decision to release additional information.

Some Intervenor-Defendants argue nevertheless that APA jurisdiction continues and that this jurisdiction includes authority to review the lawfulness of past and completed releases. Even though past releases cannot be undone nor the decision to release set aside, the Intervenors argue that the actions complained of are clearly erroneous and capable of repetition, that without judicial review and a judgment declaring the conduct unlawful, the wrongful conduct will surely reoccur, and that repetition of the wrongful conduct will most certainly result in grave and continuing harm to the Intervenors and their membership. On these grounds, certain of the Intervenor-Defendants argue that APA jurisdiction continues, irrespective of the Forest Service's statement it has withdrawn its decision to release additional materials and without regard for whether the prior decision to release can be set aside. These Intervenors pursue a judgment which concludes that the Forest Service's release of escrow waivers without prior notice to those who submitted the information or any opportunity for these submitters to be heard prior to release was arbitrary, capricious and contrary to law.

I find substantial reason to reconsider how I viewed this case in May. I now agree that the case is not moot and APA jurisdiction continues despite the purported withdrawal of the agency's decision to release additional information. This reevaluation results immediately from Defendant's Motion for Summary Judgment and its Memorandum in Opposition to Intervenors' Motions for Summary Judgment. Both inadequately explain Defendant's actions and both include inconsistent statements which tend far more to evidence a wrongdoing capable of repetition than to support Defendant's position that its past actions are moot and inconsequential. I find from what the Forest Service argues with regard to the pending motions that the posture of the case has

21

changed.

A constitutionally required case or controversy does not necessarily end when a dispositive action takes place. Cases are not rendered moot "which are capable of repetition, yet evading review." Southern Wilderness Alliance v. Smith, supra at 728. This exception enables a valid judgment whenever the judgment will serve the purpose of addressing a continuing violation or reviewing a wrong highly likely to be repeated in the future under circumstances that precede or evade judicial scrutiny. Id. at 729; Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy District, 739 F.2d 1472, 1478 (10th Cir.1984).

The prudential doctrine also directs a decision in this case. The prudential mootness doctrine limits judicial review and issuance of a declaratory judgment to those circumstances where there exists a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the same complaining party." Id. These requisites are met where an administrative agency follows an impermissible course and disregards what is mandated by its own rules and regulations, and the party complaining of the agency's practices suffers a continuing injury due to the practice. Payne Enterprises, Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir.1988). In such a circumstance, the acts causing the injury are not beyond judicial review or rendered moot because the public's interest in having the legality of the agency's practices settled militates against judicial restraint. United States v. W.T. Grant, 345 U.S. 629, 632 (1953).

A case is not moot if it meets two conditions: "(1) the challenged action . . . [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there . . . [must be] a reasonable expectation that the same complaining party . . . [will] be subjected to the action again." Fischbach v. New Mexico Activities Assoc., supra at 1160-1161, quoting Southern

<u>Pacific Terminal Co. v. Interstate Commerce Comm'n</u>, 219 U.S. 498, 515 (1911). Both require-ments are met in this case.

Were the Forest Service to face additional requests for escrow waivers from sources other than Forest Guardians or in regions not yet under scrutiny, it is extremely likely, from what the Forest Service states in its Motion for Summary Judgment and its Memorandum in Opposition to the Intervenors' motions, it would do again precisely as it has done in this case. It would argue once more that it has not erred and that issues of personal privacy and issues of fairness and due process raised by those who have submitted business information are moot when these concerns are raised after releases are complete. Should this occur, clearly wrongful administrative actions would face little, if any, deterrent and certainly no remedy. Only the exercise of jurisdiction to review completed agency action by invoking an exception to the rule of mootness saves those who have provided personal and business information to the Forest Service from the repeated risk of new, but identical injury. "While a court may not be able to return the parties to the *status quo ante. . ."* and there is nothing a court can do to withdraw knowledge or information improvidently released, "a court can fashion *some* form of meaningful relief in circumstances such as these." <u>Church of Scientology v. United States</u>, <u>supra</u> at 12-13.

Therefore, APA jurisdiction exists to review Forest Service actions, even though these actions can no longer be set aside. First, a final agency decision subject to challenge occurred with the release of information to Forest Guardians. Whether this decision was made formally or informally, regionally or idiosyncratically, the action itself, by its nature certainly irretrievable, evidences a final administrative decision which must be attributed to the United States Forest Service as the responsible agency. That the decision to release escrow waiver information did not

follow as the last step of a definitive decision-making process is mistaken and unfortunate, but the absence of a uniform or logical process does not change the essence of the decision--which had to have been seen at the time as clearly unalterable and therefore final.

In addition, the challenged action is extremely likely to occur again and again to cause injury. The Forest Service itself guarantees it will treat future FOIA requests for personal and business information in the same way it has treated them in this case. Without the slightest tendency of the Forest Service to acknowledge mistakes or consequences, its methods are as likely to create harm in the future as they have created it in the present instance, and when the Forest Service repeats what it has done in this case, its actions will again occur within a brief closed period that prevents those harmed either from forestalling the injury or from litigating the issues prior to completion of the agency action.

Moreover, I understand the Forest Service's attempts to justify its practices and the promise of repetition inherent in this justification to convert the practices into an on-going unlawful approach to FOIA requests which judgment of the actions must preclude. This certainly displaces initial inclinations that a decision might not provide meaningful relief and deposits the case solidly within an exception to the mootness doctrine. I therefore conclude not only that the exercise of jurisdiction to review the Forest Service's past actions is proper, but also that the case is not completely or fairly decided without it. An "actual controversy between the parties," very much alive, saves the case from mootness. Fischbach v. New Mexico Activities Assoc., supra at 1160.

### 2. Standard of Review

Although de novo review is usually unnecessary and the APA allows for it only in very

limited situations; Chrysler Corp. v. Brown, supra.; Acumenics v. Department of Justice, supra at 804; I understand de novo review to be permissible in the present circumstances. The Supreme Court has declared de novo review justified in two instances: first, when an action is adjudicatory in nature and an agency's fact finding procedures have been inadequate, and secondly, "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971). A limitation on de novo review

> means only that a party will not ordinarily be entitled to submit evidence to the district court bearing on the disclosure issue. This does not mean, however, that a party is foreclosed from introducing evidence on the preliminary question of the propriety of de novo review itself. This information would go solely to the question of the adequacy of the agency's fact-finding process, and would not be considered on the substantive disclosure question if de novo review were denied. Acumenics v. Department of Justice, supra at fn 5, 805-806.

An agency's decision to release information pursuant to a FOIA request over the objections of a submitter of the information is adjudicatory in nature. Id. at 804. Therefore, unless the Forest Service's administrative procedures were "severely defective," determination of the Intervenors' pending motions is limited to review of the administrative record and an arbitrary and capricious standard. Chrysler v. Brown, supra; National Org. for Women v. Social Sec. Admin., supra at 745. If, however, the Forest Service's fact finding procedures are held to be inadequate, de novo review is justified and permissible. Id.

The test of adequate fact finding in "potential reverse FOIA situations is generally governed by an executive order issued a decade ago." Department of Justice, Office of Information and Privacy, Freedom of Information Act Guide and Privacy Act Overview, 1997

Ed., p. 566. This executive order

> requires federal agencies to establish certain predisclosure notifi-
> cation procedures which will assist agencies in developing
> adequate administrative records. The executive order recognizes
> that submitters of proprietary information have certain procedural
> rights and it therefore mandates that notice be given to submitters
> of confidential commercial information whenever the agency
> "determines that it may be required to disclose" the requested
> data. Once submitters are notified under this procedure, they must
> be given a reasonable period of time within which to object to dis-
> closure of any of the requested material. Id., quoting Exec.Order
> No.12,600, sec.1.

In addition to notice of a FOIA request and an opportunity to submit objections to

disclosure, the executive order also demands "careful consideration of those objections by the

agency, and issuance of a written statement describing the reasons why any objections were not

sustained" together with procedures which provide an opportunity to appeal a tentative decision

in favor of disclosure. Freedom of Information Act Guide, supra at 568.

Adequate fact finding was described by the D.C. Circuit Court of Appeals in National

Organization for Women v. Social Security Administration, supra. In this case, the court found

submitters of information to be uniformly told that without a claim of exemption, materials sub-

mitted to the agency would be subject to FOIA disclosure. Accordingly, submitters were allowed

to identify information they considered to be exempt from FOIA and to submit materials sup-

porting the claim of exemption. If claims of exemption were filed by submitters of information, the

agency required an administrative official to reach a decision whether or not the submitted

materials were exempt within 10 days. If the official decided adversely to the submitter, the

decision could be appealed to the agency and additional materials provided to supported the

claim. The D.C. Circuit concluded that by these procedures a submitter of information has (a)

notice of a possible FOIA release, (b) an opportunity to submit objections and to provide support for the objections, (c) a statement of the agency's position, and (d) an opportunity to appeal an agency decision to release, and the court held these procedures to constitute a legally adequate fact finding process. Id. at 745-746.

The Ninth Circuit Court of Appeals has held less to be adequate, but where it held an agency's FOIA procedures were sufficient as provided, the only mandate of Executive Order No. 12,600 not a part of the agency's standard process was an administrative appeal. Pacific Architects & Engineers v. United States Department of State, supra at 1348. No court has found adequate fact finding where submitters of information were not notified of a pending FOIA request, given an opportunity to object and provided a thorough explanation of the agency's decision to release. Freedom of Information Act Guide, supra, 566-569.

It is immediately apparent from the record in this case that fact finding by the Forest Service was literally non-existent. The Forest Service failed entirely to follow the precepts of either Executive Order No. 12,600 or Department of Agriculture FOIA regulations. Dismissing both out of hand, the Forest Service states only that it "does not rely" on the FOIA regulation cited by the Intervenor-Defendants.

I have no idea what the Forest Service intends by this statement, but I conclude that the regulation cited applies with the force of law to FOIA requests where the information requested includes proprietary or business data and that the regulation "not relied on" by the Forest Service does not present an option or opportunity to decline. I find, as well, that escrow waivers on their face indicate personal, proprietary and business data, as well as questions of confidentiality that must be considered as part of any reasoned agency decision to release escrow waiver information.

27

Therefore, because the decision to release information was adjudicatory in nature and the agency's fact finding procedures were clearly inadequate, I conclude that review of the Forest Service's past actions in this case may be *de novo*. Camp v. Pitts, 411 U.S. 138, 142 (1973); Olenhouse v. Commodity Credit Corp., supra.

At the same time, I note that, for the most part, de novo review in this case is not necessary. Therefore, it has not been employed where the result under an arbitrary and capricious standard would be the same. As demonstrated by disposition of the pending motions, in most instances, if judicial review of the pertinent issue is limited to the administrative record and an arbitrary and capricious test is applied, the agency action nonetheless fails to pass judicial scrutiny. "Generally, an agency decision will be considered arbitrary and capricious if 'the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Friends of the Bow v. Thompson, 124 F.3d 1210, 1214 (10th Cir.1997), citing Motor Vehicle Mfrs.Ass'n v. State Farm Mutual Auto Ins., 463 U.S. 29, 43 (1983). In the present case, I find the Forest Service failed to consider mandatory FOIA procedures, the personal nature of the information being released or the harm to be done by an unnoticed release of what, at least initially, should have been cautiously regarded as confidential commercial information. I find, in addition, that the Forest Service offers only post hoc explanations for its actions and that these run counter to the evidence, and I see neither a plausible explanation for the manner in which the Forest Service processed the Forest Guardians' FOIA requests nor agency expertise. Therefore, I conclude that application of either standard of review

28

results in this case in the same disposition of the issues.

### Defendant's Motion to Dismiss

The Memorandum Opinion and Order entered May 25 dismissed all of the Intervenor-Defendants' claims except those grounded in the APA. After this Memorandum Opinion and Order, the PLC group of Intervenor-Defendants voluntarily dismissed its cross claims. The Forest Service now moves for an order dismissing all remaining cross claims, contending that (a) the propriety of past releases is moot, and therefore outside APA jurisdiction, and (b) without a final agency decision defining the scope of future releases, no APA jurisdiction exists to consider whether anticipated releases accord with reason and law.

I agree that no APA jurisdiction exists to consider whether anticipated releases accord with reason and law and none is here invoked. However, I have stated why I do not agree that the controversy regarding the completed release of escrow waivers and escrow waiver information is not moot. Therefore, I deny Defendant's Motion to Dismiss.

### Plaintiff's Motion for Summary Judgment

Forest Guardians first point argues the public significance of the information at issue. Release of escrow waivers to the public, the organization contends, will shed light on the Forest Service's policy

> of allowing public lands grazing permits to be used as collateral for private loans. Those loans are based at least in part on the number of cows allowed to be grazed on the National Forests under the permit issued by the USFS. As a result of this USFS policy, grazing permit holders are being allowed to create security interests in favor of private lenders which give those lenders a direct financial stake in the amount of grazing that the agency permits on land that is owned by the American people.

29

> The Forest Service, by agreeing to act as an escrow agent to facilitate the collateralization of public lands grazing privileges by private parties, fosters both an expectation and economic pressure on the part of both grazing permittees and their lenders to pressure the Forest Service to maintain the highest possible levels of grazing on the permitted allotments used as collateral under the agency's escrow waiver program.

Forest Guardians argues these points even though FOIA requests can be made for any reason whatsoever. The purpose for which records are sought is said to have no bearing on the merits of a request and FOIA requesters need not explain or justify their requests. United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 771 (1989). The public interest weighs in, however, when a government agency or third party claims that the requested information is exempt from mandatory disclosure and is protected by a specific FOIA provision. At this point, determining whether a government record is exempt from mandatory disclosure may require a balancing of the public interest in disclosure against the interest Congress intended to protect, and in undertaking this balancing, the public interest in FOIA disclosures is defined as the extent to which disclosure serves 'the core purpose of the FOIA;'" United States Department of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 495 (1994). FOIA's core purpose is described as "contributing significantly to the public understanding of the operations or activities of government." Sheet Metal Workers Int'l Association, Local No. 9 v. United States Department of the Air Force, 63 F.3d 994, 996 (10th Cir.1995).

Forest Guardians also argues the Freedom of Information Act. Forest Guardians contends that none of the information contained in escrow waivers can be legally withheld and that all of it is subject to mandatory disclosure and should be released by the Forest Service.

A. The Freedom of Information Act

The Freedom of Information Act was enacted to facilitate public access to government documents, and without question, the law is designed to encourage disclosure. Environmental Protection Agency v. Mink, 410 U.S. 73 (1973). While FOIA does not require public disclosure of every government document, it provides a direct access "to information that sheds light upon the government's performance of its duties." Audubon Society v. United States Forest Service, 104 F.3d 1201, 1203 (10th Cir.1997). Thus, when interpreting what the Act requires, the first presumption must favor release of the requested information. Department of Justice v. Reporters Committee, supra. "The FOIA is to be broadly construed in favor of disclosure . . . , and its exemptions are to be narrowly construed." Anderson v. Department of Health and Human Services, supra. For this reason, when an agency refuses to release documents, the burden is on the agency to establish that the information is exempt and can be withheld. Id.; Department of Justice v. Reporters Committee, supra. When a third party seeks to prohibit the release of information, the third party also has the burden of establishing that the information falls within a FOIA exemption and can be withheld. Id. at 755.

The presumption in favor of disclosure is not without limits. FOIA is not simply "an avenue to acquire information about other private parties held in the government's files." Painting Industry of Hawaii Market Recovery Fund v. United States Department of the Air Force, 26 F.3d 1479, 1484 (9th Cir.1994). Portions of the statute "bolster the conclusion that disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." Department of Justice v. Reporters Committee, supra at 765. "The statutory purpose [of FOIA] is not furthered by a disclosure of information about private citizens which 'reveals

31

little or nothing about an agency's own conduct." Oliva v. United States, 756 F.Supp.105,106 (E.D. N.Y.1991).

To prevent the unnecessary disclosure of materials pertaining to private citizens, FOIA lists specific categories of information which need not be released. 5 U.S.C. sec. 552(b). These exemptions from mandatory disclosure are intended to protect individual interests and to allow individuals a means of controlling information concerning his or her person and personal affairs. Department of Justice v. Reporters Committee, supra. The exemptions have been widely interpreted to afford broad protections against the release of information pertaining to individual citizens, and the privacy interests protected by these exemptions is generally considered substantial. Hopkins v. United States Department of Housing and Urban Development, 929 F.2d 81 (2d Cir.1991); Aronson v. United States Department of Housing and Urban Development, 822 F.2d 182 (1st Cir.1987); Green v. United States, 8 F.Supp.2d 983 (W.D.Mich.1998).

### B. Information Exempt From Mandatory Disclosure

Of the nine categories of information specifically exempted from mandatory disclosure, the parties in this case cite only three, each commonly referred to by the number of the subsection where the exemption is listed in the Freedom of Information Act. Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. sec. 552(b)(4). Exemption 6 excludes from mandatory FOIA disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. sec. 552(b)(6).  Exemption 8 protects information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial

institutions." 5 U.S.C. sec. 551(b)(8). All parties agree that no other of the exemptions listed in FOIA pertain to the information at issue in this case.

While Forest Guardians argues all of the information contained on an escrow waiver form is subject to mandatory release, the Intervenor-Defendants uniformly argue that all escrow waiver information is subject to a FOIA exemption. Neither side approaches the issues by adequately examining the specific information item by item. I nevertheless consider the information item by item. Review "may not simply conclude that an entire file or body of information is protected without consideration of the component parts." Anderson v. Department of Health and Human Services, supra.

Exemption 4

FOIA's exemption confidential trade secrets and commercial or financial information

> . . . is intended to protect both the government and submitters of information. Its existence encourages submitters to voluntarily furnish useful commercial or financial information to the government and it correspondingly provides the government with an assurance that such information will be reliable. The exemption also affords protection to those submitters who are required to furnish commercial or financial information to the government by safeguarding them from the competitive disadvantages that could result from disclosure. Freedom of Information Act Guide, supra at 135.

If not a trade secret, Exemption 4 applies only if the information is "(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential." National Parks and Conservation Association v. Morton, 498 F.2d 765, 766 (D.C.Cir.1974), cited favorably in Anderson v. Department of Health and Human Services, supra at 944.

> The language of Exemption 4 and the tests articulated by the courts suggest that businesses are granted broad protection from

33

disclosure of their confidential commercial information which is submitted to agencies. However, it must be stressed that the FOIA does not compel an agency to withhold documents falling within Exemption 4; to the contrary, the Act authorizes the agency to disclose the information despite the submitters' requests for confidentiality if the agency determines that the submitters' interests in confidentiality are outweighed by the public's interest in disclosure. The FOIA is a disclosure statute. An agency acts within the clear bounds of its discretion if it chooses to disclose information that would otherwise fall within one of the nine exemptions. Paul M. Nick, "De Novo Review in Reverse Freedom of Information Act Suits," 50 Ohio St. L. J. 1307, 1315 (1989).

Exemption 4 protection is not limited solely to economic data and information provided by business entities. Freedom of Information Act Guide, supra at 138. "Person" is interpreted to include a wide range of entities and the requirement is "quite easily met in all circumstances." Id. at 139. In addition, Exemption 4 clearly applies to personal financial information. Id. at 138. The most difficult question most often confronted in determining whether Exemption 4 applies is whether the information is "privileged or confidential." Id. at 140.

"Privileged" and "confidential" have been repeatedly interpreted by the courts. The term "privileged" has generally been restricted to an "underlying privilege" that is "not otherwise specifically embodied in the language of Exemption 4 such as the attorney-client privilege [cite omitted], the attorney work product privilege [cite omitted], and the confidential report privilege [cite omitted]." Anderson v. Department of Health and Human Services, supra at 945. "Few agencies have relied heavily" on Exemption 4 because another exemption, Exemption 6, also applies to certain privileged and confidential information. 50 Ohio St. L. J., supra.

For purposes of Exemption 4, the test of "confidential" commercial and financial information is whether disclosure is likely '(1) to impair the Government's ability to obtain

necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" Anderson v. Department of Health and Human Services, supra at 946. "Under the second prong of the test, the parties opposing disclosure need not 'show actual competitive harm;' rather, it is sufficient that they show some evidence of both 'actual competition and the likelihood of substantial competitive injury.'" 50 Ohio St. L. J., supra, citing Gulf & Western Industries v. United States, 614 F.2d 527, 530 (D.C. Cir.1979).  "Failure to make the necessary showing on either point would require a court to compel disclosure. . . ." National Parks and Conservation Association v. Kleppe, 547 F.2d 673, 678, 178 U.S. App. D.C. 376, 381 (D.C. Cir.1976).

Materials already in the public domain normally do not support a meritorious claim of confidentiality. Id. at 951. There are exceptions to this rule, however, when public records may be so voluminous as to conceal the information sought. Avondale Industries, Inc. v. National Labor Relations Board, 90 F.3d 955, 961 (5th Cir.1996). In these instances, the fact that information is available publicly does not nullify the exemption. Id. at 961 and fn 10; Sheet Metal Workers, Local No. 9 v. United States, supra; Department of Justice v. Reporters Committee, supra. FOIA was not intended to convert the federal government into "a clearinghouse for personal information." Id. at 761.

In this regard, the Farm Credit Banks argue that if the information in escrow waivers were freely available in the public domain, Forest Guardians would not have needed a FOIA request. The Supreme Court has agreed, stating in Department of Justice v. Reporters Committee that "if the information were 'freely available,' there would be no reason to invoke the FOIA to obtain access to the information . . . ." Supra at 764. In this case, the escrow waivers or portions of the

information contained in escrow waivers publicly available is available only one document at a time by researching each individually in the records and files of a multitude of county clerk office's throughout the Western United States. Some information, such as descriptions of collateral or terms, may not be consistently available. This easily places escrow waivers within the "practical obscurity" test; and the fact that escrow waivers are filed in county clerk's offices is insufficient, by itself, to exclude them from Exemption 4 protection. Id. at 780.

Forest Guardians addresses the point only speculatively. It concludes harm is unlikely because escrow waiver information is "freely and cheaply available from other sources" and argues that "it is extremely unlikely that disclosure . . . could cause competitive harm to either the escrow waiver permittees or their lenders." These arguments thoroughly contradict the amount of time and resources Forest Guardians obviously invests in the present attempt to obtain the information from the Forest Service and deny the reality of searching countless inconsistent documents contained in a wide variety of state systems and scattered throughout county clerk records in nearly a dozen states. Most assuredly, these are neither facts nor arguments which enable a summary judgment.

For additional reasons, the information at issue is not as clearly outside Exemption 4 as Forest Guardians insists. In opposing Forest Guardians' arguments that Exemption 4 does not apply to escrow waiver information, the Farm Credit Banks refer to a D.C. Circuit rule which distinguishes information provided to the government voluntarily from information provided under compulsion. If the information at issue was provided voluntarily, the D.C. Circuit holds it to be "confidential" for purposes of FOIA's Exemption 4 if it is the kind of information that would not customarily be released to the public by the person from whom it was obtained. Critical Mass

Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871 (D.C.Cir.1992), *cert. denied* 507 U.S. 984 (1993). The Second Circuit also makes a distinction for information provided voluntarily and defines "voluntary" as not subject to compulsory process. A.Michael's Piano, Inc. v. Federal Trade Commission,18 F.3d 138,144 (2d Cir.1994).

The Tenth Circuit has not yet formally adopted the D.C. Circuit's position, but I view the distinction for information provided voluntarily to be relevant to deciding whether information is exempt from mandatory disclosure, and contrary to what Forest Guardians argues, I find escrow waiver information voluntarily provided. Clearly, it is not subject to compulsory process. In fact, each federal escrow waiver form states: "The information requested on this form is voluntary; however, all of the data requested is necessary if you wish to be considered for an escrow waiver of term grazing permit privileges." Nothing in the circumstances of submitting the form appears to alter this initial statement or to change the voluntary nature of the information provided. While a borrower may not pledge a grazing permit as collateral for a loan without providing all of the information requested, a borrower always retains the choice to withhold the information and not use the grazing permit as collateral. If either a lender or a borrower chooses not to provide the information, the government can deny use of the grazing permit as collateral, but cannot by any means, including judicial process, either force the lender or the borrower to provide the information or nullify the loan.

These fact demonstrate substantial differences from the facts in National Parks and Conservation Association v. Morton, supra, (referred to by the D.C. Circuit as "Parks I"), on which Forest Guardians relies. In the Parks I case, the D.C. Circuit Court of Appeals held financial information submitted by Park Service concessioners not submitted voluntarily because

without provision of business information, a concessioner could not obtain a permit to operate within a National Park. These concessioners, however, were attempting to renew permits and already held legal interests in structures, fixtures and improvements on land within the National Park. They could neither operate within the park nor protect these investments without a renewed permit. National Parks and Conservation Association v. Kleppe, supra at 676, 379, appeal after remand ("Parks II"). The Secretary of the Interior and the Park Service controlled not only the concessions, but also the prices that could be charged by each concessioner. Id. The Secretary was "required to examine periodically the reasonableness of the prices charged by each concessioner and comparable businesses and the value of the concession privileges;" and requested financial information from the concessioners pursuant to a statutory mandate "to exercise his authority in such a manner as to ensure that all concessioners have a reasonable opportunity to profit from their investment." Id.

This is completely dissimilar to the present case. In this case, the Forest Service holds no regulatory authority over agricultural loans or the use of escrow waivers as collateral. The Forest Service has no independent reason for collecting the information, and the lender, not the Forest Service, needs and requires the waiver. Further, the importance of a grazing permit as potential collateral is untold, and a borrower's loss of the right to pledge a grazing permit may be minor. Loan and collateral amounts listed on escrow waiver forms do not break down how much of each is attributable to a grazing permit, but even if a grazing permit were to increase the amount loaned significantly and it remained unavailable because a borrower refused to provide information on an escrow waiver form, the consequence does not deprive either the lender or the borrower of both their property and their means of making a living. Thus, rather than establishing escrow waiver

information as mandatory, by comparison to other data submitted to government agencies, the National Parks cases underscore the voluntary nature of escrow waiver information.

Considering all the arguments, then, and all that is contained in the record, I cannot conclude as matter of law that escrow waivers are clearly outside Exemption 4 protections. From the undisputed facts, I can determine that one Exemption 4 test is met. Because the Forest Service has no real interest in escrow waiver information (and when it is not provided, the Forest Service simply denies the availability of waiving in favor of a lender), disclosure of the information can pose no threat to the government or its ability to obtain needed information in the future. The facts are insufficient, however, to determine that escrow waiver information is necessarily "confidential" or whether disclosure of escrow waiver information would cause substantial harm to the competitive position of the persons or lending institutions from whom the information was obtained.

### Exemption 6

Exemption 6 shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The exemption applies to "any Government [document] on an individual which can be identified as applying to that individual." United States Department of State v. Washington Post, 456 U.S. 595, 601-602 (1982). Intended to protect a personal "privacy interest" and not extending to businesses or entities, Exemption 6 "encompasses 'the individual's control of information concerning his or her person.'" Sheet Metal Workers, Local No. 9 v. United States, supra at 996, quoting Department of Justice v. Reporters Comm., supra.

Exemption 6 applies without regard for whether the information requested is available to

the general public by some other means or in some other form. Disclosure has been held to pose "a substantial threat to privacy if disclosed to the general public in an alternative form potentially subject to abuse." Campaign for Family Farms v. Glickman, 200 F.3d 1180, 1188 (8th Cir.2000). "[T]he fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information." Department of Justice v. Reporters Comm., supra at 770. "An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." Department of Defense v. FLRA, supra at 500. Exemption 6 protections thus extend to information which simply identifies the person, such as name and address. Id. at 500-501; Sheet Metal Workers, Local No. 9 v. United States, supra. Where identifying information is combined with financial information, exemption 6 protects a "substantial privacy interest." Id.; Department of Justice v. Reporters Comm., supra.

The language of Exemption 6 implicitly demands a balancing test. Sheet Metal Workers, Local No. 9 v. United States, supra at 996; Campaign for Family Farms v. Glickman, supra at 1183. This test weighs the privacy interest threatened against the public's interest in disclosure, generally interpreting the privacy interest broadly and the public interest narrowly. Sheet Metal Workers, Local No. 9 v. United States, supra; Painting Industry of Hawaii Market Recovery Fund v. Department of the Air Force, supra at 1484. Weighing a broadly defined privacy interest includes consideration of "the wide range of use to which such information. . . could be put by others besides the particular requester." Sheet Metal Workers, Local No. 9 v. United States, supra at 997. Recognizing a public interest in disclosure demands that the personal information sought  contribute substantially to the public's understanding of the operations of government. Id.

The Forest Service declares this "balancing of privacy and public interests" "the only legitimate issue in this case," but does not explain why it failed to undertake any fact finding or reasoned decision making process in this regard. All that the Forest Service now provides in its Motion for Summary Judgment and in its several responses and replies consists of arguments of counsel. None of these arguments or rationalizations are contained in the administrative record and none constitute a rational basis for the decision of the Forest Service to release personal financial information to the public domain. When juxtaposed to the considerable number of Supreme Court, circuit court and federal district court cases that hold a "substantial" privacy interest in information which identifies the individual, most particularly when combined with financial information, it is especially shocking that, prior to its release of escrow waiver information, the Forest Service appears not to have given what it calls a real and singularly applicable issue so little thought.

Even at first blush, it is apparent that personal loan information and individual names contained on escrow waivers fall well within Exemption 6. See: <u>Green v. United States</u>, 8 F. Supp. 2d  983 (W.D. Mich. 1998). On closer examination, it is also apparent that the public interest does not outweigh the invasion of personal privacy. In the <u>Green</u> case, the court found that "loan information on unknown borrowers would not enlighten citizens about the inner-workings of the [Farm Services Agency]." <u>Id</u>. at 998. The same is true in this case. Individual names and loan amounts lend absolutely nothing to comprehending workings within the Forest Service. This information sheds no light at all upon the government's performance of its duties.

Intervenor-Defendant PLC argues that escrow waivers, in general, indicate nothing of the

Forest Service's grazing permit program. Emphasizing that the amount loaned based on addition of a federal grazing permit is not distinguished on the escrow waiver from the amount of the loan based on other collateral pledged, PLC argues that a grazing permit is "but a small, and mostly insignificant, consideration for the loan," and disclosure of the names of the permittees participating in the escrow waiver program and the amount loaned to these permittees cannot shed any light on the conduct of the Forest Service. While the Forest Service controls issuance of grazing permits, PLC argues, it has no control whatsoever over who participates in the escrow waiver program once the permit issues. Citing Department of Justice v. Reporters Comm., supra, PLC contends that the purposes of FOIA are not fostered by information about individuals that reveals little or nothing about agency conduct.

I agree. I think the "public interest" Forest Guardians assumes stands in serious question. Looking at the numerous decisions where courts have attempted to identify the quality of "public interest" that weighs in favor of a FOIA disclosure against FOIA's exemption for a "clearly unwarranted invasion of personal privacy," I find these courts order release only when the information sought uncovers for the public eye the manner in which a federal agency functions. The personal financial information Forest Guardians seeks does not.

The Forest Service is not in the business of escrow waivers. It has no authority to reject, limit or modify escrow waivers either before or after they are signed by a borrower or received from a lending institution. The Forest Service has no statutory responsibility to monitor how financial institutions are valuing grazing permits or increasing loans by reason of adding a grazing permit as collateral. Neither the escrow waiver itself nor the personal financial information provided tells the public or the Forest Service how financial institutions are valuing grazing

permits or to what extent they are increasing private loans by reason of the added collateral. The Forest Service is merely a depository of the written waivers, and the waiver is merely a memorialization of a personal financial transaction that reveals nothing about how the Forest Service manages, renews or monitors grazing permits.

The Tenth Circuit notes that when balancing the people's right to know against individual privacy interests, the Supreme Court "has narrowly defined the 'public interest.'" Sheet Metal Workers, Local No. 9 v. United States, supra at 996. This careful carving out applies to this case. Both Forest Guardians purposes and the public interest are served as well by proving the existence of escrow waivers, as part of a systematic pledging of federal grazing permits as private collateral, and an identification of their present number and the National Forests to which they apply as they are served by the mass production of every individual waiver and every individual piece of personal financial information. The names of the National Forests and the tracts where public land is pledged as collateral to secure private loans evidences the number of times the Forest Service has sanctioned the escrow waiver practice and this alone is pertinent to the public interest and what Forest Guardians seeks to demonstrate. Forest Guardians cannot establish the value placed on an individual grazing permit by a particular lender because such information is not available. Therefore, the publication of *one* escrow waiver, which has already occurred, does as much to inform the public as the publication of another 300. It is the land and use of the land that falls within the public interest. This is not aided by identification of mortgagors or by publication of mortgage amounts or description of mortgage collateral where it is undisputed that the collateral securing the loan includes substantially more than a federal grazing permit and that the value placed on the grazing permit cannot be determined from the information provided. If Forest

Guardians' objective is to destroy the "expectation and economic pressure on the part of both grazing permittees and their lenders to pressure the Forest Service to maintain the highest possible levels of grazing on the permitted allotments used as collateral," it is not genuinely aided in this endeavor by publication of personal financial information. It needs to pursue its end by examination and criticism of the federal policy and the administrative agency, not by an attempt to harass, harm, embarrass or encumber private individuals who are acting completely within the law.

Neither the Forest Service nor any of the Intervenor-Defendants in this case who seek to preclude disclosure deny that the Forest Service permits federal grazing permits to be used as collateral for private loans. The point is fully conceded. With the publication of what has been released to this time, the point is also well proven. The question now is whether additional escrow waiver information adds anything at all to the public's knowledge of how *the Forest Service* functions. I don't see that it does. I conclude that personal information, including name and residential address, and personal financial information consisting of loan amounts and due dates, the date an individual mortgaged property and livestock and, except for the federal grazing permit, a description of the property pledged as collateral, are all protected by FOIA from mandatory disclosure and are not to be released.

In addition, where Exemption 6 pertains to protect information from mandatory disclosure, its application also excludes the possibility of an agency's discretionary release of information because the balancing test required to decide whether materials are protected by Exemption 6 tracts the same balancing that must be employed by an administrative agency in deciding whether information not subject to mandatory disclosure should be released as a matter

of discretion. <u>Campaign for Family Farms v. Glickman</u>, <u>supra</u> at 1184-1185. "The only difference between the two is that balancing under the personal privacy exemption is weighted far more in favor of disclosure than the 'clearly unwarranted' language of the exemption. Therefore, a determination . . . that the [information] is subject to FOIA's personal privacy exemption necessarily must also be a determination that [the agency] should not disclose it under its discretionary release regulation." <u>Id.</u> at 1185. "As with private commercial information covered by Exemption 4, the personal information protected by Exemptions 6 and 7(C) is not the type of information ordinarily considered appropriate for discretionary FOIA disclosure; with these exemptions, a balancing of public interest considerations is built into the determination of whether the information is exempt in the first place." <u>Freedom of Information Act Guide</u>, <u>supra</u> at 396.

Therefore, I conclude that Plaintiff's Motion for Summary Judgment must be denied. I find that the public interest in disclosure of personal financial information found on escrow waiver forms fails to outweigh the harm and unwarranted intrusion disclosure of this information certainly brings to individuals and individual privacy interests. Personal identifying information and personal financial information are clearly protected and this information is not subject to release pursuant to FOIA. In addition, while other information contained on escrow waiver forms may be subject to mandatory release pursuant to the Freedom of Information Act, these issues cannot be determined by summary judgment.

<u>Farm Credit Banks' Motion for Partial Summary Judgment</u>

Intervenor-Defendants referred to as the Farm Credit Banks appeal the Forest Service decision to release escrow waiver information as arbitrary and capricious or as contrary to law on four separate grounds. These Intervenors seek a determination that both the agency's procedures

and its decision to release information were unlawful and were arbitrary and capricious. The Farm

Credit Banks argue that:

(1) the information contained in escrow waivers is exempt as a matter of law from

disclosure pursuant to FOIA because the information is both "commercial or financial" and

"confidential" within the meaning of FOIA's Exemption 4, and release of the information by the

Forest Service is therefore arbitrary and capricious and contrary to law;

(2) the Farm Credit Banks are "financial institutions" and escrow waivers are exempt from

disclosure as a matter of law by FOIA's Exemption 8, because escrow waivers "contain

information which is contained in or related to examination and condition reports for the use of

the Farm Credit Administration which is responsible for the regulation of Farm Credit Banks,"

and release of the information by the Forest Service is therefore arbitrary and capricious and

contrary to law;

(3) the Forest Service failed to follow standard pre-release FOIA procedures required by

United States Department of Agriculture regulation 7 C.F.R. sec. 1.11, and neglect of legally

required procedures renders the decision to release information arbitrary and capricious; and

(4) prior to release of escrow waiver information, the Forest Service failed to balance the

public benefit in disclosure against the private harm that would result, as required by Department

of Agriculture regulation 7 C.F.R. sec. 1.17, and its failure to do so results in an arbitrary and

capricious decision.

The Farm Credit Banks contend escrow waivers are exempt from disclosure pursuant to

FOIA's Exemption 4 because the information is clearly confidential as a matter of law. Citing 12

C.F.R. sec. 602.215, the Farm Credit Banks argue they are themselves legally barred from

providing the loan amount, due date and collateral information contained in escrow waivers.

The argument, however, is not persuasive. If at some time the argument represented an accurate statement of the law, no authority is cited to suggest that a Farm Credit Administration regulation would override the statutory demands contained in FOIA, and the cited regulation has apparently been withdrawn. The Farm Credit Administration regulations cited presently refer specifically to FOIA and the Privacy Act as the only standards for the disclosure and withholding of information. 12 C.F.R. Part 600 (2000). In setting out rules for the release of information, the regulations state a clear intent to release information according to what the law requires, rely solely on FOIA exemptions, and make no special provision, reference or protection for escrow waiver information. Id. The regulations simply state that the Farm Credit Administration (a) will decide each FOIA or Privacy Act request when received, (b) if an exemption is relied on to withhold information, will cite the exemption applied, and (c) will follow a structured appeal procedure for objections to a decision to withhold. These regulations define business records according to the terms of Exemption 4 and add nothing to alter the meaning of "commercial or financial" as these words are used in FOIA.12 C.F.R. sec. 602.3. Until the Farm Credit Administration is confronted with a request for escrow waiver information, it is impossible to know how it might respond, but nothing in the agency's regulations or in regulations pertaining to the Farm Credit System treats escrow waiver information differently from any other information requested pursuant to FOIA.

Neither does any other argument presented by the Farm Credit Banks allow for a legal conclusion that escrow waiver information is confidential as a matter of law. After reciting the tests for Exemption 4 confidentiality that must be used in the Tenth Circuit, the Farm Credit

Banks provide no facts, contested or uncontested, material to (1) whether release of the information contained in escrow waivers would impair the government's ability to obtain similar information in the future or (2) whether release would "cause substantial harm to the competitive position of the person from whom the information was obtained.'"Anderson v. Department of Health and Human Services, supra at 946. Case law demands that "[i]n order to show substantial competitive injury, [the Intervenor] must prove that it actually faces competition and that 'substantial competitive injury would likely result from disclosure.'" Anderson v. Department of Health and Human Services, supra. The Farm Credit Banks do not point to any such facts, and their unique position as cooperative businesses within the structure of the Farm Credit System leaves me unable to assume either competition or the possibility of competitive injury.

From the facts presented, it is impossible to determine that release of the information contained in escrow waivers would cause substantial harm to the competitive position of the person from whom the information was obtained. "[S]pecific factual or evidentiary material" is required to sustain the burden of proof under Exemption 4, and conclusory opinion is insufficient. Pacific Architects and Engineers, Inc. v. The Renegotiation Board, 505 F.2d 383, 385, 164 U.S. App. D.C. 276 (D.C. Cir.1974);  National Parks and Conservation Association v. Kleppe, supra at 679, 382.

The Affidavit of Gregory J. Buehne, Exhibit 1 to the Farm Credit Banks' Motion for Partial Summary Judgment, provides little that is helpful or uncontested. The Affidavit states:

> Disclosure of *confidential* financial or commercial information submitted to the Forest Service by the Farm Credit Banks, their customers, or their borrowers destablizes the financial relationship among these entities. This is likely to cause substantial harm to the competitive position of the Farm Credit Banks in comparison

> to commercial lenders who are not subject to the 1990 Memor-
> andum of Understanding or Forest Service's regulations on sub-
> mission of escrow waivers. Id. at para.11 (emphasis added).

Initially, this begs the question because it presupposes as "confidential" the very information

subject to a determination of confidentiality. In addition, even though case law mandates that each

kind of information at issue be separately examined, the averments fail to distinguish among

different kinds of information contained in escrow waivers (such as name and address of the

lender or the borrower as opposed to loan amount or valuation of collateral). A district court

"must determine whether all of the requested materials fall within an exemption to the FOIA and

may not simply conclude that an entire file or body of information is protected without

consideration of the component parts." Anderson v. Department of Health and Human Services,

supra at 941. Other statements in the Affidavit address critical facts only conclusively.

      As does the Affidavit of Frederick W. Obermiller, Exhibit 8 to the Farm Credit Banks'

Motion for Partial Summary Judgment, the statements made raise more questions that they settle.

Do the Farm Credit Banks actually compete with "commercial lenders" in the issuance of

agricultural loans? If a commercial lender made a loan to a rancher and included the rancher's

federal grazing permit as collateral, would not the commercial lender require an escrow waiver?

And if an escrow waiver were signed in favor of a commercial lender and afterward held by the

Forest Service, would not this escrow waiver be subject to the same FOIA requests and standards

as escrow waivers issued in favor of a Farm Credit Bank? Conversely, if by the absence of a

separate Memorandum of Understanding, commercial lenders cannot utilize grazing permits as

loan collateral, do these commercial lenders stand in real or meaningful competition to the Farm

Credit Banks who can?

The Affidavit of Frederick W. Obermiller states in part: "If confidential financial information of Forest Service permittees is disclosed outside the Forest Service, many of those permittees will seek alternative lenders who will, as those alternative lenders should, hold financial records privileged." This misses the point entirely. Forest Guardians has not requested that the Farm Credit Banks divulge financial information nor do the Farm Credit Banks propose to do so. The Forest Service holds the escrow waivers, and regardless of their source or the lender named, as a government agency the Forest Service is subject to the same FOIA standards. Should the Forest Service hold escrow waivers--now or in the future--which have been issued in favor of "an alternative lender," there is no reason whatsoever to believe that the Forest Service would not release these escrow waivers in the same manner it has released escrow waivers under the facts of this case. The facts argued by the Farm Credit Banks which are absolutely necessary to meet the tests for confidentiality of information pursuant to Exemption 4 are thus confused and inadequate.

In addition, the Farm Credit Banks err in stating that Forest Guardians bears the burden of establishing that escrow waivers are *not* confidential. The burden of proof as to confidentiality and Exemption 4 protection must always rest with the party seeking to preclude disclosure. National Parks and Conservation Association v. Kleppe, supra at 679, 382. More than that, whenever an administrative agency or a third party claims a FOIA exemption, the facts relied on to establish information within an express FOIA exemption must be sound enough to overcome a district court's obligation to resolve doubt in favor of disclosure. A.Michael's Piano, Inc. v. Federal Trade Commission, supra at 142. Even though the present motion is treated as an appeal pursuant to the APA and not as part of a FOIA case, pertinent Tenth Circuit decisions strongly suggest the burden of proof should be no different in this instance. See: Anderson v. Department of Health

and Human Services, supra. If the Farm Credit Banks rely on a FOIA exemption to establish that the Forest Service acted arbitrarily and capriciously or otherwise contrary to law, the Farm Credit Banks must solidly establish its applicability.

On their first point, then, the Farm Credit Banks do not prevail. Although the Forest Service's several careless and inconsistent decisions to release escrow waivers are not condoned, I cannot agree with the Farm Credit Banks that the actions are arbitrary and capricious for the reason that escrow waivers fall within FOIA's Exemption 4 as a matter of law.

Exemption 8

The Farm Credit Banks argue that they are "financial institutions" and "Escrow waivers contain information which is contained in or related to examination and condition reports for the use of the Farm Credit Administration which is responsible for the regulation of the Farm Credit Banks." By this the Farm Credit Banks insist that all information contained on escrow waiver forms is saved from disclosure pursuant to a FOIA request.

Were the argument to be taken as meritorious, it would shield everything banking institutions accumulate if any possibility existed the information might be reviewed in the process of a bank examination. Such a vague and sweeping definition of what Exemption 8 encompasses can only be regarded as antithetic to the "concrete, workable standards" the Supreme Court requires for determining what particular materials may be withheld pursuant to FOIA. EPA v. Mink, supra. Neither does such an extremely broad definition accord with the Supreme Court's consistent position that FOIA's disclosure requirements are to be interpreted broadly and its exemptions narrowly. The Tenth Circuit, as well, has declined to give a broad construction to statutory terms on the ground that FOIA favors disclosure and exemptions are to be read

51

narrowly. <u>Anderson v. Department of Health and Human Services</u>, <u>supra</u> at 943-944.

Arguing to the contrary, the Farm Credit Banks distort the law. While the Farm Credit Banks may be correct that Exemption 8 completely protects reports of or related to a bank examination, it is not correct that every piece of paper in a bank's records are protected as a result, and notably, the Farm Credit Banks provide no authority in support of their broad interpretation of escrow waiver information relative to Exemption 8. I therefore conclude that arguments attempting to exempt escrow waivers from mandatory disclosure by reason of Sec. 552(b)(8) are not only without merit, but are also absent any precedent in case law or in logic.

7 C.F.R. sec.1.11

Regulation 7 C.F.R. sec. 1.11. requires all agencies within the United States Department of Agriculture, including the Forest Service, "in the course of responding to a FOIA request," when the agency "cannot readily determine whether the information obtained from a person is privileged or confidential business information" . . . , "to obtain and consider the views of the submitter of the information and to provide the submitter an opportunity to object to any decision to disclose the information." <u>Id</u>.

While I am unable to settle here whether as a matter of law escrow waivers contain "privileged or confidential business information," they are arguably within this class of materials and without doubt, the Forest Service did not "readily determine" otherwise. It thus appears by the plain language of the regulation that the Forest Service should have been applied when the FOIA requests from Forest Guardians were received by the Forest Service.

The Forest Service neither denies its failure to comply with these directives nor offers an explanation why it did not. The Forest Service refers to the regulation at Section 1.11 only in its

consolidated response to the Intervenors' Motions for Summary Judgment. Here the Forest Service states merely that it "does not base its position on that regulation and does not purport or intend to make any discretionary release of the escrow waivers under it." It appears by this, first, that the Forest Service sees Section 1.11 as applying exclusively to the discretionary release of documents, and second, that the agency has belatedly adjudged the release of escrow waivers pursuant to a FOIA request as mandatory.

An agency's interpretation of its own regulations is entitled to great deference, but can be rejected if found to be unreasonable, plainly erroneous or inconsistent with the regulation's plain meaning. Bar MK Ranches v. Yuetter, 994 F.2d 735, 738 (10th Cir.1993). I find the agency's view of Section 1.11 to be unreasonable, plainly erroneous and inconsistent with the regulation's plain meaning. Section 1.11 states:

> If a request . . . is received in USDA for information which has been submitted by a business, all agencies of the Department shall:
>
> (1) Provide the business information submitter with prompt notification of a request for that information (unless it is readily determined by the agency that the information requested should not be disclosed or, on the other hand, that the information is not exempt by law from disclosure);
>
> (2) Notify the requester of the need to inform the submitter of a request for submitted business information;
>
> (3) Afford business information submitters time in which to object to the disclosure of any specified portion of the informa- tion. . . .
>
> (4) Provide business information submitters with notice of any determination to disclose such records prior to the disclosure date, in order that the matter may be considered for possible judicial intervention; and

(5) Notify business information submitters promptly of all
instances in which FOIA requesters bring suit to compel disclosures
of submitted information. Id.

This regulation the Forest Service summarily dismisses is simply a common sense statement for the fair and just handling of potentially sensitive information and is clearly calculated to provide an agency with pertinent information and prevent gross errors in judgment not easily remedied. Nothing indicates the regulation, promulgated in direct response to Executive Order 12600, is an optional procedure. Absolutely nothing in the administrative record indicates that the Forest Service "readily determined" that escrow waivers were not exempt by law from disclosure and everything in the administrative record points to the fact it did not. The Forest Service, however, cavalierly dismisses both the purpose and the applicability of Section 1.11 by stating it "does not rely on it."

As multiple cases suggest, the FOIA procedures set out in the Department of Agriculture regulations are common to administrative agencies throughout the government and are routinely followed. The Forest Service's negligent or willful neglect of its own rules is extraordinary. Clearly, it resulted in harm to the Farm Credit Banks and other Intervenor-Defendants. Not only the absence of notice that a FOIA request had been received and release was imminent, but also the failure to explain the reasons for release and allow for objections or appeal denied the all Intervenors as submitters of the information a necessary and meaningful process. Further, "the FOIA office's failure to give a written explanation for its initial determination to deny confidential treatment deprived [the submitter of the information] of the ability to argue to the General Counsel (in writing or orally) that the FOIA office was wrong." Occidental Petroleum Corp. v.

54

SEC, supra at 345, 132.

The Forest Service failed completely to handle Forest Guardians' FOIA requests in any reasonable manner. When the Forest Service received the requests, FOIA exemptions should have been reviewed immediately. Section 1.11 should have been referenced and compliance set in place. Surely, this was not a situation to be parceled region-to-region or allowed such a wide and careless disparity in results. The Forest Service should have presented the submitters of the requested information with notice of the Forest Guardians' request and should have allowed for a response, undertaken fact finding, articulated a reasoned judgment and published a formal determination of the decision to release with time for the submitters to object or appeal. It did *none* of these things. At what point the Forest Service actually took note of Section 1.11 is never explained. The administrative record contains no acknowledgment of Section 1.11 requirements, and the assertion that escrow waivers fall within mandatory disclosure requirements and Section 1.11 does not apply is clearly an ad hoc justification for overlooking procedures that should have been followed. The record includes solid evidence that the Forest Service did not readily see the requested escrow waivers as mandatory FOIA disclosures. As Intervenor-Defendant PCANM points out, the Forest Service "specifically referenced FOIA exemptions (b)(4) and (b)(6) in its correspondence" to Forest Guardians.

Without doubt, all this necessitates the conclusion that Forest Service decisions were arbitrary and capricious. Without doubt, Section 1.11 is applicable to the circumstances of Forest Guardians's FOIA requests. The Forest Service's disregard of its own regulations indicates only that it acted without considering all that it should have and that it proceeded in the process to commit exactly the grave errors Section 1.11 was intended to prevent.

7 C.F.R. sec.1.17

The Farm Credit Banks also claim that the Forest Service neglected other of its own required procedures and thus acted contrary to law. The Intervenors argue the agency failed to comply with the regulation directing discretionary releases.

Section 1.3(a)(4)(ii) of the Department of Agriculture regulations authorizes agencies to "[m]ake discretionary releases pursuant to sec. 1.17(b)." Section 1.17(b) states in its entirety:

> (a) All agency records, except those specifically exempted from mandatory disclosure by one or more provisions of 5 U.S.C. 552(b), shall be made promptly available to any person submitting a request under this subpart.
>
> (b) Except where disclosure is specifically prohibited by Executive Order, statute, or applicable regulations, an agency may release records exempt from mandatory disclosure under 5 U.S.C. sec. 552(b) whenever it determines that such disclosure would be in the public interest. Such a record is considered to be in the public interest if the benefit to the public in releasing the document outweighs any harm likely to result from disclosure.

That information requested pursuant to FOIA falls within an explicit exemption thus does not end the analysis. Even if the requested escrow waivers are said to come within a FOIA exemption, the Forest Service is not barred from releasing them. "FOIA exemptions are no more than their description implies. That is, they are exemptions from mandatory disclosures only; they do not prohibit agency disclosure." Campaign for Family Farms v. Glickman, supra. Unless release is clearly prohibited by another law, the matter is discretionary with each administrative agency; and should an agency decide in its discretion to release information, its actions are subject to reversal only for an abuse of discretion. National Organization for Women,D.C. Chapter v. Social Security Administration, supra at 735.

56

The record in this case is not clear, but itt does not evidence a discretionary release. The Intervenors apparently infer that because the release of escrow waivers is exempt from mandatory disclosure, but were disclosed nonetheless, the release must have been at the agency's discretion. Yet, the inconsistent nature of the releases make it more likely that the releases resulted from mistake, negligence or willful neglect. Thus, I do not find the record to support the Intervenor's inference, and the argument that the Forest Service failed to follow procedures for a discretionary release is inapplicable.

Conclusion

Therefore, I agree with the Intervenors that in handling Forest Guardians' FOIA requests, the Forest Service failed to undertake procedures required by its own regulations, to engage in sufficient fact finding or to utilize a rational and consistent decision-making process. I also agree with the Intervenors that the gross deficiencies in Forest Service procedures resulted in harm to the Intervenor-Defendants and their members. I cannot agree, however, that the Forest Service acted contrary to law or arbitrarily and capriciously because as a matter of law the information it released is protected by a specific FOIA exemption. I find insufficient concrete and uncontested facts to make this determination. In declaring the agency action arbitrary and capricious for other reasons, I also find additional reasons for setting aside the agency action are unnecessary, and I conclude that APA jurisdiction limits the extent to which I can examine the claims of FOIA exemptions raised by the Intervenors.

Even though I agree with the Farm Credit Banks in only one of their four reasons why past actions of the Forest Service should be held arbitrary and capricious, the Farm Credit Banks fully succeed in their appeal of the administrative action challenged. A declaration that the Forest

Service has acted arbitrarily and capriciously completely disposes of the claims presented by the Farm Credit Banks for which jurisdiction exists. It is not necessary, in order to dispose finally and completely of all claims pursuant to the APA, that I agree with all four grounds on which the Farm Credit Banks argue their position.

Agency action can be upheld only if the agency "examined the relevant data and articulated a rational connection between the facts found and the decision made." Olenhouse v. Commodity Credit Corp., supra at 1574. The failure to follow its regulations, the absence of fact finding and the failure to articulate reasons for the inconsistent release of escrow waiver information evidences arbitrary and capricious actions justifiably declared unlawful and set aside. In so deciding, I find and conclude in favor of the Farm Credit Banks.

<u>Intervenor PCANM's Motion for Summary Judgment</u>

In its appeal of the Forest Service's release of escrow waiver information, PCANM raises several of the same arguments presented by the Farm Credit Banks. First, PCANM relies on 7 C.F.R. sec.1.11 to argue that Forest Service actions in this case have been arbitrary and capricious. In addition, PCANM maintains that FOIA's fourth and eighth exemptions protect escrow waiver information, and finally, PCANM argues that the Farm Credit Administration's "Policy Statement on Borrower Privacy" provides a legally enforceable confidentiality to escrow waivers.

By its first argument, PCANM prevails in its case against the Forest Service. As with the Farm Credit Banks, I find the Forest Service acted arbitrarily and capriciously in failing to follow the procedures mandated by 7 C.F.R. sec.1.11, and PCANM fully succeeds in its case, even though I do not agree with other of PCANM's arguments. As to Exemption 4, I again do not

have enough information to decide that escrow waivers as a matter of law are exempt from

mandatory disclosure, and as to Exemption 8, I again conclude the argument to be without merit.

PCANM additionally relies on the Farm Credit Administration's "Policy Statement on Borrower

Privacy." I find the statement to be evidence relevant to determining whether escrow waivers

should be protected by Exemption 4 or Exemption 6, but I do not find the policy statement by

itself enough to declare escrow waivers in the hands of the Forest Service confidential as a matter

of law.

The statement, together with the Farm Credit Administration regulations at 12 C.F.R. sec.

618.8300, *et seq*., requires Farm Credit Act institutions to restrict access to borrower information.

Lenders and agents of lenders must protect information regarding a borrower's character, credit

standing and property. Release of loan information to third parties, except with the written

consent of the borrower, for the use of  bona fide lien holders or pursuant to very limited

circumstances are prohibited. These Farm Credit Administration policies and regulations,

however, cannot provide authority which legally binds the Forest Service or requires it to

contravene FOIA requirements. Even if the policy statement were that of the Forest Service, it

would not bind the Forest Service to protect escrow waiver information from a FOIA request

because

> agencies retain substantial power to determine the confidentiality of
> the submitters' information. . . . . Even if the agency, pursuant to a
> presubmission confidentiality agreement, was to classify the submitter's
> information as confidential, courts have held that such a promise is not
> of itself sufficient to defeat subsequent agency disclosure. 50 Ohio St.
> L.J., <u>supra</u> at 1315.

At most, what PCANM provides can be taken not as a statement of law which controls the case,

but as evidence pertinent to a determination whether, once requested pursuant to FOIA, escrow

waivers are subject to mandatory disclosure and whether, once faced with a FOIA demand for

escrow waivers, the Forest Service should have included Farm Credit Administration policies in

its decision to release.

An agency decision is arbitrary and capricious if, in reaching its decision, the agency failed

to examine relevant data. Olenhouse v. Commodity Credit Corp., supra at 1574. An agency's

action can be upheld,

> if at all, on the basis articulated by the agency itself. . . . Thus, the
> grounds upon which the agency acted must be clearly disclosed in,
> and sustained by, the record. . . . The agency must make plain its
> course of inquiry, its analysis and its reasoning. . . . After-the-fact
> rationalization by counsel in briefs or argument will not cure non-
> compliance by the agency with these principles." Id.

PCANM's recitation of Farm Credit Administration policies and procedures, then, only

demonstrates what the Forest Service *might* have considered to save its determinations from

being arbitrary and capricious. Whether consideration of "Policy Statement on Borrower Privacy"

or regulations at 12 C.F.R. sec. 618.8300, *et seq*., would have resulted in the Forest Service

withholding some or all escrow waiver information, as PCANM wants, is impossible to know,

particularly since FOIA by itself does not prohibit the disclosure of any information.

### PLC's Motion for Summary Judgment

PLC additionally argues that actions of the Forest Service are arbitrary and capricious and

contrary to law. First, PLC claims Exemption 6 precludes the disclosure of personal financial

information as a matter of law. Secondly, PLC argues that release of escrow waivers constitutes a

violation of the Privacy Act, 5 U.S.C. sec. 551a. However, as to the latter, PLC presents no

jurisdictional basis or cause of action, but simply argues provisions of the Act protect the

information contained in escrow waivers. I view this argument, the same as that citing the Farm Credit Administration's policy statement, as relevant to establishing the weight of the privacy interest when balanced against the public interest and accept the Privacy Act as a consideration, but not as controlling law. The Privacy Act provision cited by PLC yields to FOIA. Department of Defense v. FLRA, supra at 494.

In relying on Exemption 6, PLC points out that the administrative record contains no evidence the Forest Service engaged in any fact finding or any balancing of interests before it released escrow waivers haphazardly, or afterward, before it agreed to release additional information to end the present suit, or finally, before it withdrew all its conclusions and declared it had reached no decision to disclose or to withhold. I agree and see this as demonstrating the arbitrary and capricious character of the Forest Service's response to Forest Guardians' several FOIA requests. As soon as the Forest Service received the Forest Guardians' requests, at a minimum it should have seen Exemption 6 as implicated, at least to the point that required the Forest Service to engage in a thorough inquiry, define and balance the interests involved and articulate a reasoned judgment. Its failure to do so is unexplained. Its release of personal information without having done so is inexcusable. APA jurisdiction allows me to go no further.

PLC fully prevails, then, on the ground that Exemption 6 applies to the information at issue and the Forest Service's release of personal financial information contained on escrow waiver forms without consideration of its private nature or any balancing of the public interest against the intrusion upon personal privacy prior to release renders the decision to release arbitrary and capricious and contrary to law. The Forest Service's decision to release cannot be set aside, but it can be declared wrongful and directly responsible for harm to the Intervenors and

their membership.

<u>Defendant's Motion for Summary Judgment</u>

By its Motion for Summary Judgment, Defendant United States Forest Service requests a judgment and order mandating "the release of all information in the escrow waivers other than loan amounts, due dates and names of individual lenders." Nothing in FOIA permits an administrative agency to delay its decisions on a FOIA request until a district court decides what information should be disclosed. FOIA expressly provides to the contrary. Thus, after failing to conduct any rational or standardized process prior to the initial releases, the Forest Service does not serve its own purposes well by explicitly withdrawing a decision on the Forest Guardians' FOIA requests and then moving for a court order directing full release. In arguing for release of escrow waiver information it has refused to release, it appears the Forest Service has made a final determination on the issues. Yet, it declares it has not and I take it at its word. In doing so, however, the agency's refusal to make a responsible decision and stand by it, together with the untenable nature of its inconsistencies and post hoc justifications make this case complex, difficult and prolonged beyond all need or excuse.

I have read all that the Forest Service provides in this case. I refuse, however, to consider the agency's Motion for Summary Judgment. "Unless the records 'fall squarely' within one of the statutory exemptions," the Forest Service now argues, "the agency must produce the records." It did not. Where FOIA jurisdiction governs, the Forest Service is not entitled to a judicial determination of what it has refused to decide.

Where APA jurisdiction governs, summary judgment is not an appropriate means of reaching the merits, and I cannot view what the Forest Service files as if it were properly

designated, as I did with the Intervenor-Defendants because the Forest Service disclaims any final decision to release information pursuant to FOIA so that nothing exists for the agency to defend, and with regard to past releases, the agency ignores all possibility of error and stands on what it characterizes as an impeccable record and flawless procedure. While it has a great deal to explain, its Motion for Summary Judgment does nothing more than call for an imprimatur upon all past acts and defends them not in the least. With regard to either completed releases or the possible release of escrow waiver information in the future, the Forest Service fails to present an adequate administrative record, a rational decision-making process or a well-reasoned judgment. All of what is contained in it Motion for Summary Judgment must be regarded as justifications which follow rather than drive an administrative decision and none of it can be deemed a defense of administrative actions challenged on appeal.

In all that the Forest Service files in this case, it insists that the FOIA regulation at 7 C.F.R. sec. 1.11 does not apply. "It can be readily determined as a matter of law that publicly recorded information is not confidential business information . . . ." If that is the case, one can only wonder why the Forest Service did not respond to all of Forest Guardians' requests in a prompt and consistent manner, directing a clear and consistent result from its central office, rather than delegating the outcome of the FOIA requests to regional offices which apparently failed to undertake any standardized approach and obviously could not decide in any consistent fashion what should and should not be released or redacted. Whether or not the Forest Service should have been able to "readily determine whether the information obtained . . .is privileged or confidential business information," it did not do so. It has failed, in fact, to make a final administrative decision in that regard to this day. The course of conduct allows for only one

reasonable inference: at the time the requests for escrow waivers were received, the Forest Service could not readily determine whether or not escrow waivers or escrow waiver information should be released--and therefore, section 1.11 should have been applied.

The Forest Service has exhibited little but arbitrary and capricious decisions that leave this case still in a peculiar posture. Where the administrative agency has neither complied with FOIA nor stands ready to defend withholding information, a trial will present more unique and difficult issues. I am hoping the parties will be able to reach a negotiated solution. If the parties want to proceed with settlement negotiations, they need to request the Magistrate Judge who presided in past negotiations to schedule the case. If he agrees and the parties appear, the Intervenor-Defendants must understand that they have fully prevailed on their claims and at a future date will be dismissed as parties. They may participate in settlement negotiations only if the presiding judge agrees, only to the extent he directs, and only to the end of preventing the need for further litigation.

NOW, THEREFORE, IT IS ORDERED that the Plaintiff's Motion for Summary Judgment is denied;

IT IS FURTHER ORDERED that the Defendant's Motion to Dismiss is denied and the Defendant's Motion for Summary Judgment is dismissed; and

IT IS FURTHER ORDERED that each of the Intervenor-Defendant's Motions for Summary Judgment are re-designated as Motions to Set Aside An Agency Decision and are granted on the merits for the reason that the agency action is held to be arbitrary and capricious;

64

and

　　　　IT IS FURTHER ORDERED that judgments ending the cases filed by Intervenor-

Defendants shall enter separately.

_____
SENIOR UNITED STATES JUDGE