**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


FOREST GUARDIANS, a non-profit
New Mexico corporation,

                    Plaintiff,

v.                                             No. CIV 99-615M/KBM

UNITED STATES FOREST SERVICE,

                    Defendant,

PRODUCTION CREDIT ASSOCIATION
OF NEW MEXICO,

                    Intervenor-Defendants,

PUBLIC LANDS COUNCIL, NEW
MEXICO PUBLIC LANDS COUNCIL, and
NEW MEXICO CATTLE GROWERS'
ASSOCIATION, each a non-profit
organization and on behalf of their respective
members,

                    Intervenors-Defendants,

AGAMERICA, et al

                    Intervenors-Defendants
                    and Cross-Claimants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

      THIS MATTER comes before me on two applications for attorneys' fees and costs filed

by the Intervenors-Defendants Public Lands Council, the New Mexico Public Lands Council and

the New Mexico Cattle Growers' Association (collectively known as PLC) and the Intervenor-

Defendant Production Credit Association of New Mexico or PCANM.  Intervenor-Defendant

Agamerica has not joined in these applications.  The United States Forest Service, the Defendant,

has responded to these applications but the Plaintiff, Forest Guardians, has not.  Upon full

consideration of the applications, the arguments contained therein, the responses filed by the

United States Forest Service, and the replies, I find that the applications should be granted

pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412.


### BACKGROUND OF THE CASE

This lawsuit was filed on June 2, 1999.  It began as a dispute between the Plaintiff, Forest

Guardians, and the Defendant, the United States Forest Service (USFS), over a Freedom of

Information Act request by Forest Guardians.  Forest Guardians had sought copies of escrow

waiver forms from the USFS.  Escrow waiver forms are a means by which ranchers who hold

permits to graze livestock on Forest Service land can place into escrow their grazing permits as

partial collateral for financial loans.  The forms had originally been completed and submitted to

the USFS by PCANM and other financial institutions.  The escrow waiver forms contained

personal identifying information such as the names of permittees, a description of the permittees'

base property, identification of the allotment that the permittee grazes upon, the name of the

lender used by the permittee, the amount loaned to the permittee and a description of other

collateral pledged by the permittee.

When it responded to Forest Guardians' Freedom of Information request, the USFS had

redacted some, but not all, of the personal identifying information on the escrow waiver forms.

Moreover, the redactions were inconsistent throughout the forms.  Forest Guardians sought in its

lawsuit to have the requested information released without any redactions.  The Applicants, Intervenors-Defendants PLC and PCANM,  intervened arguing that the information on the escrow waiver forms that had been released by USFS had been personal, financial information and should never have been released under the Freedom of Information Act.  Furthermore, the Applicants argued that before USFS had even considered releasing any of the escrow waiver forms, USFS should have notified those who had submitted the information on the forms.

Because the facts were undisputed in this action, the case was presented on cross motions for summary judgment. The Court issued a Memorandum Opinion and Order on January 12, 2001, finding in favor of the Intervenors-Defendants.  The Court held that the personal, financial information contained in the escrow waiver forms was outside both the mandatory and discretionary disclosure requirements of the Freedom of Information Act.  The Court also held that the manner in which the USFS responded to Forest Guardians' Freedom of Information Act requests was arbitrary and capricious.  Lastly, the Court declared that the decision by the USFS to release the personal and business information in the escrow waiver forms submitted to the USFS without notifying those who had submitted the information or allowing them an opportunity to be heard prior to release was contrary to law.  Having found in favor of the Intervenors-Defendants, the Court entered a Judgment on January 29, 2001 in which it stated that each party was to pay its own costs and attorneys' fees.

<u>DISCUSSION</u>

Upon reconsideration, I have determined that the Applicants, the Intervenors-Defendants PLC and PCANM, are entitled to attorneys' fees and their costs under the Equal Access to Justice

Act, 28 U.S. C. §2412 (d)(1)(A).  The  Equal Access to Justice Act (EAJA) states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The Intervenors-Defendants PLC and PCANM were each "a prevailing party" in this lawsuit.  The Memorandum Opinion and Order of January 12, 2001 granted each of the Intervenors-Defendants' Motions.  The statute does not limit the award of attorneys' fees to plaintiffs who prevail but allows an award of attorneys' fees and expenses to "a prevailing party" who has made a timely application.  This language includes intervenors as well if they are among the prevailing parties in the civil action.  *But see, U.S. v. Buel*, 765 F. 2d 766 (9th Cir. 1985) (applicants not eligible for attorneys fees under EAJA because were never granted status as intervenors).

The second inquiry in determining whether applicants shall be awarded their attorneys' fee and expenses is whether the position of the United States was substantially justified.  The January 12, 2001, Memorandum Opinion and Order concluded that the position of the United States Forest Service was arbitrary and capricious when it responded to the Freedom of Information requests.  Normally, "[t]he government bears the burden of showing that its position was substantially justified."  *United States v. Undetermined Quantities of an Article of Device,* 797 F. Supp. 861, 863 (D. Colo. 1992).  However, the United States Forest Service has not presented anything to show that its position was substantially justified.  Therefore, I find, based upon my previous analysis of the USFS positions in this case, that the position of the United States was not

substantially justified and does not preclude an award of attorneys' fees and expenses to the

Intervenors-Defendants PLC and PCANM.

The third inquiry is whether the Intervenors-Defendants PLC and PCANM are parties

within the definition of the Equal Access to Justice Act, 28 U.S.C. §2412 (d)(2)(B).  A party

under EAJA is defined as:

> (i) an individual whose net worth did not exceed $2,000,000 at the time the civil
> action was filed, or (ii) any owner of an unincorporated business, or any
> partnership, corporation, association, unit of local government or organization, the
> net worth of which did not exceed $7,000,000 at the time the civil action was filed,
> and which had not more than 500 employees at the time the civil action was filed;
> except that an organization described in section 501(c)(3) of the Internal Revenue
> Code of 1986 (26 U.S.C. 501 (c)(3)) exempt from taxation under section 501(a)
> of such Code, or a cooperative association as defined in section 15(a) of the
> Agricultural Marketing Act (12 U.S.C. 1141 j(a)), may be a party regardless of the
> net worth of such organization or cooperative association or for purposes of
> subsection (d)(1)(D), a small entity as defined in section 601 of Title 5;

PCANM has averred that in October, 1999, when it intervened in this lawsuit, it was an

association with a net worth of substantially less than seven million dollars ($7,000,000) with less

than five hundred (500) employees.  Public Lands Council, New Mexico Public Lands Council

and New Mexico Cattle Growers' Association are each non-profit organizations and have also

averred that at no time have they had more than five hundred employees or a net worth of more

than seven million dollars ($7,000,000).  All Applicants qualify as parties under the EAJA.

The Applicants made their application for attorneys' fees within thirty days of the final

order in this lawsuit.  USFS filed a Notice of Appeal with the United States Courts of Appeals for

the Tenth Circuit.  Subsequently, USFS filed a Motion to Dismiss its appeal.  On November 21,

2001, the Court of Appeals for the Tenth Circuit issued an Order granting the USFS' Motion to

Dismiss its Appeal.  The Order stated "A certified copy of this order shall stand as and for the

mandate of the court." Thus, the final order in this lawsuit was filed November 21, 2001 which gave Applicants thirty days in which to file their requests for attorneys' fees and expenses. Both Applicants made timely filings, one on December 19, 2001 and the other on December 21, 2001.

The United States Forest Service argues that the applications for attorneys' fees and expenses should be denied because of my ruling in the Judgment filed January 29, 2001 which stated that each party was to pay its own costs and attorneys' fees. The USFS argues that the issue of attorneys' fees and expenses has been previously litigated and is therefore res judicata. The application for attorneys' fees and expenses pursuant to the EAJA could not be made until a final order had been entered in this lawsuit. That did not happen until November 21, 2001. Once the applications were made, I reconsidered my Judgment of January 29, 2001 and have determined that the Applicants are entitled to their reasonable attorneys' fees and expenses under the Equal Access to Justice Act §2412 (d)(1)(A). The Act directs that fees and expenses shall be awarded to prevailing parties as long as certain requirements are met, which requirements have been met by these Applicants.

<u>REASONABLE ATTORNEYS' FEES AND EXPENSES</u>

Having found that the Intervenors-Defendants PLC and PCANM were prevailing parties, that the position of the United States was not substantially justified, that each of the Intervenors-Defendants making this application were eligible parties under the EAJA, and the applications were timely, the inquiry turns to the issue of whether the requested expenses and fees are reasonable under the Equal Access to Justice Act. The Equal Access to Justice Act, as amended in 1996, caps attorneys' fees at $125 an hour unless a special factor justifies a higher fee. 28

U.S.C. §2412 (d)(2)(A).  I do not find that a special factor justifies a higher fee in this case.
Therefore, all attorneys' fees are capped at $125 in accordance with the EAJA.

The first step in calculating a fee award is to determine the number of hours reasonably
spent by counsel.  *Ramos v. Lamm*, 713 F. 2d 546, 553 (10th Cir. 1983).  The court must
determine not just the actual hours expended by counsel, but which of those hours were
reasonably expended in the litigation.  *Id.*  Counsel should make a good-faith effort to exclude
those requested hours that are excessive or redundant.  *Ellis v. University of Kansas Medical
Center*, 163 F. 3d 1186,1202 (10th Cir. 1999).  In determining what is a reasonable time in which
to perform a given task or to prosecute the litigation as a whole, the court should consider: (1)
whether the tasks being billed would normally be billed to a paying client, (2) the number of hours
spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies
pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential
duplication of services by multiple lawyers.  *Robinson v. City of Edmond*, 160 F. 3d 1275, 1281
(10th Cir. 1998).


### ATTORNEYS' FEES OF APPLICANT PLC

Taking the *Robinson v. City of Edmond* factors into consideration, I find the number of
hours requested by counsel for Intervenors-Defendants PLC are reasonable with one exception.
PLC began its involvement in this lawsuit in early November, 1999 with representation by the
Budd-Falen Law Offices, P.C., of Cheyenne, Wyoming.  Local counsel was Hubert & Hernandez,
PA, of Las Cruces, New Mexico.  In the intervening two years, PLC maintained an active role in
the litigation filing numerous pleadings, attending settlement conferences and coordinating its

responses with the other Intervenor-Defendants.  The case was complex and was litigated

tenaciously by the USFS and Forest Guardians.  The bill for attorneys' fees submitted in this

application included many instances of "No Charge" demonstrating that counsel made a good

faith effort to eliminate those hours which were deemed unnecessary, redundant, unproductive to

the litigation or excessive.  Having reviewed the bill I find only one instance of hours billed which

I will deny.  The charge by Karen Budd Falen on January 17, 2001, for 0.75 hours regarding

"preparing a press release" announcing or explaining the Memorandum Opinion and Order issued

a few days earlier by this Court is unnecessary to the litigation of this case and will not be

allowed.

   When determining a reasonable hourly rate for each attorney or paralegal, the court should

determine what lawyers of comparable skill and experience practicing in the area in which the

litigation occurs would charge for their time.  *Case v. Unified School District No. 233*, 157 F. 3d

1243, 1256 (10th Cir. 1998).  When the court is presented with a sworn affidavit that the market

commands a certain rate, the court should grant rates in accordance with the evidence presented.

Ms. Budd-Falen, the owner of the Budd-Falen Law Offices, P.C., submitted an affidavit stating

that the hourly fees charged by her and her associates were below the billing rates of attorneys in

Albuquerque where this case was litigated when compared to attorneys with similar backgrounds,

years of experience and expertise.  As the senior partner of the firm, Karen Budd-Falen, billed her

time at $110 an hour.  The senior associates, Richard Walden and John M. McCall, billed their

hours ranging from $95 an hour to $105 an hour.  Senior associate Eric Lundgren billed his time

at $105 an hour.  Based upon the affidavit of Karen Budd-Falen, I find that these fees, all within

the statutory cap on attorneys' fees in the Equal Access to Justice Act, are reasonable for this

geographic area, this kind of case and this area of expertise.  The attorneys' fees will be awarded at the rates requested for the various members of the law firm.

PLC has also submitted bills for hours for a paralegal assistant, Michelle Olson, at $60 an hour.  The Tenth Circuit has recognized the "increasingly widespread custom of separately billing for the services of paralegals" but requires the district court to "determine whether law clerk or paralegal services are normally part of the office overhead in the area, and thus already reflected in the normal area billing rate the court has established in the case." *Ramos*, 713 F. 2d at 559.  "If those services are ... not reflected in the area rate, the court may award them separately as part of the fee for legal services." *Case v. Unified School District No. 233*, 157 F. 3d 1243, 1249 (10th Cir. 1998).  While this issue was not addressed in the Affidavit of Karen Budd-Falen, taking into consideration the hourly rates charged by the senior partner and her associates, I find it reasonable to assume that the services of the paralegal were not already included in the billing rate of the attorneys of this office.  Therefore, I will allow the paralegal hours to be awarded at $60 an hour. Removing the one charge I find unnecessary and not productive to the litigation, I find that the reasonable attorneys' fees incurred by the Intervenors-Defendants PLC were $56,062.00.

<u>EXPENSES OF APPLICANT PLC</u>

The expenses submitted by the Intervenors-Defendants PLC included long distance charges, fax charges, copying expenses, postage, on-line research charges and travel expenses. The application also includes, as expenses, the professional fees incurred by the firm of Hubert & Hernandez, PA, in Las Cruces, New Mexico and apparently paid by the Intervenors-Defendants PLC by being passed through the Budd-Falen Law Offices in Cheyenne, Wyoming.  Hubert &

Hernandez, PA, represented the Intervenors-Defendants PLC as required local counsel.  My

concern with the professional fees, or attorneys' fees, of Hubert & Hernandez, PA, is that I am

unable to examine the billings of this law firm for those charges which may have been

unnecessary, redundant, unproductive to the litigation or excessive for the matter being worked

upon.  Nor am I able to determine the hourly rate which was charged for the legal work done by

Hubert & Hernandez, PA.  Without more, I am unable to determine if the billings submitted by

Hubert & Hernandez, PA, are reasonable in either their scope and in their hourly fees.  Therefore,

I am denying the billings of the Hubert & Hernandez, PA in the amount of $7,619.57 as expenses

to be reimbursed to the Applicant PLC.  If the Applicant PLC wishes, it may re-submit the billings

of the Hubert & Hernandez, PA law firm as additional attorneys' fees with detailed billing records

so that the charges may be reviewed as required.  The other expenses submitted by the

Intervenors-Defendants PLC are allowed in the amount of $10,663.38 as reasonable and

necessary expenses incurred in the course of litigating this lawsuit.


### ATTORNEYS' FEES OF APPLICANT PCANM

Intervenor-Defendant PCANM was represented by Dave Thomas & Associates, P.C., of

Albuquerque, New Mexico.  Mr. Thomas submitted an affidavit outlining his expertise, his typical

fees for work involved in this type of lawsuit, his long standing representation of the Intervenor-

Defendant PCANM and how his fees compare to those hourly rates charged by other attorneys in

this geographic area and in this area of legal expertise. Mr. Thomas has requested that his hours

billed be awarded to the Applicant at $150 an hour.  However, the Equal Access to Justice Act,

the statutory authority under which I am awarding attorneys' fees and expenses, caps attorneys'

fees at an hourly rate of $125 unless a special factor justifies a higher fee.  Having found no

reason to justify a higher fee than the Act allows, I will award the Applicant PCANM attorneys'

fees incurred by Mr. Thomas at the cap of $125 an hour.  I find, based upon the affidavit

submitted by Mr. Thomas, that an hourly rate of $125 is reasonable for Mr. Thomas' legal work.

I have also reviewed Mr. Thomas' hourly billings for Applicant PCANM's taking into

account the factors enumerated in *Robinson v. City of Edmond*.  I find that the number of hours

requested by Dave Thomas & Associates, P.C., counsel for the Applicant PCANM, are

reasonable with one exception.  On October 27, 1999, Mr. Thomas billed 0.5 hour for a telephone

call with an Albuquerque Journal reporter.  A phone call to the media does not fall within the

parameters of work reasonable expended in the litigation of this lawsuit and will not be allowed as

a reasonable attorneys' fee.  Therefore, Mr. Thomas's billed hours are reduced by 0.5 to 626.1

hours.  Applying an hourly rate of $125 an hour to those hours results in an award of attorneys'

fees for Mr. Thomas's legal work of $78,262.50 to the Applicant PCANM.

Mr. Thomas used an independent contract attorney, Ms. Donaghy, to help him in this

case.  Ms. Donaghy's detailed billings are attached to the application for attorneys' fees and costs

and have been reviewed by this court keeping in mind the factors enumerated in *Robinson v. City

of Edmond*.  Her hourly billings, which were billed to Dave Thomas & Associates, P.C., ranged

from $60 to $65 an hour.  Mr. Thomas has argued that Ms. Donaghy's hourly rate is below the

hourly rate charged by most attorneys with her level of experience and that her hourly rate should

be increased to and awarded at $125 an hour.

However, as a independent contract attorney working outside Mr. Thomas' office, Ms.

Donaghy had to spend a significant amount of time communicating with Mr. Thomas about the

11

case and her assignments, learning about the posture of the case and becoming familiar with the work that needed to be done. Ms. Donaghy's billings reflect these tasks. For example in one month, May, 2000, the billings include, *inter alia*, "telephone call with D. Thomas re drafting strategy - .4, ... telephone call with D. Thomas re status and pending issues - .5, ... second call with D. Thomas re impact and strategy on summary judgment ... - .5". At the same time, Mr. Thomas' billings reflect the same telephone calls, conferences, discussion of strategy and time taken to assign and explain tasks to Ms. Donaghy. This built in redundancy that occurs when using an independent contract attorney is reflected in the lower than market rate charged by independent contractors. Keeping in mind this built in redundancy when using an independent contract attorney, I find that Ms. Donaghy's hourly rates are reasonable, even considering her expertise and her experience, for her work done as an independent contract attorney. I also find that the hours she billed to Dave Thomas & Associates, P.C., were reasonable for the tasks performed. The attorneys' fees incurred by Ms. Donaghy in the amount of $9534.19, which includes her gross receipts tax, are awarded to the Applicant PCANM.

## EXPENSES OF APPLICANT PCANM

The expenses submitted by Applicant PCANM from Dave Thomas & Associates, P.C., include d copying costs, fax charges, long distance, conference call charges, delivery charges and parking fees. The charges total $549.97. These expenses were reasonable and necessary expenses incurred in the course of litigating this lawsuit and will be awarded to the Applicant PCANM. The expenses submitted by Applicant PCANM from Ms. Donaghy's billings include copying charges, conference calls and parking fees. The charges total $84.92. Again these

expenses were reasonable and necessary expenses incurred in the course of litigating this lawsuit and will be awarded to the Applicant PCANM.

CONCLUSION

In conclusion, Intervenors-Defendants PLC are awarded their attorneys' fees of $56,062.00 and expenses and costs in the amount of $10,663.38. Intervenors-Defendants PLC are disallowed $83.00 of attorneys' fees and are disallowed $7,619.57 of expenses.

Intervenor-Defendant PCANM is awarded attorneys' fees for the work done by Mr. Thomas of $78,262.50 and attorneys' fees for the work done by Ms. Donaghy in the amount of $9,534.19 for a total attorneys' fee of $87,796.69. Intervenor-Defendant PCANM is disallowed $62.50 of attorneys' fees. Expenses for Intervenor-Defendant PCANM are awarded in the amount of $634.89 for expenses incurred by Dave Thomas & Associates, P.C., and in the amount of $84.92 for expenses incurred by the law office of Ms. Donaghy for a total expenses award of $634.89 to the Applicant PCANM..

_____

SENIOR UNITED STATES JUDGE